UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
A.R., *individually and on behalf of all others similarly situated,*

                                      Plaintiff,

                  -against-

THE CITY OF NEW YORK;
CITY OF NEW YORK DEPARTMENT OF
CORRECTION COMMISSIONER JOSEPH PONTE;
CORRECTION OFFICER MAYWEATHER; and
JOHN AND JANE DOE CORRECTION OFFICERS 1-25,

                                    Defendants.
------------------------------------------------------------------------x

## CLASS ACTION COMPLAINT

Plaintiff A.R. and the putative class that she represents, by and through her undersigned counsel, Giskan Solotaroff Anderson & Stewart LLP, allege as follows upon information and belief as against Defendants The City of New York ("City"), City of New York Department of Correction ("DOC") Commissioner Joseph Ponte, DOC Correction Officer ("CO") Mayweather, and John and Jane Doe Correction Officers 1-25 (collectively, "Defendants").

## INTRODUCTION

1. The City of New York is illegally strip-searching visitors to City jails.

2. The United States Constitution requires that, to justify the strip search of a particular visitor, prison officials must point to specific, objective facts and rational inferences that establish particularized reasonable suspicion directed specifically to that visitor. That is because courts have long recognized that such visitor searches are, at the very least, extremely embarrassing and unpleasant, and, at worst, dehumanizing and

repulsive. Therefore, by randomly strip searching visitors to its jails, the City is breaking the law.

3.     On October 2, 2015, Plaintiff A.R. was illegally strip and/or body cavity searched while visiting an inmate at Rikers Island. Plaintiff A.R. was searched by an unidentified CO while Defendant Mayweather observed, although there was no particularized reasonable suspicion and/or probable cause to search A.R.

4.     A.R. is not the first person to accuse Defendants of forcing visitors to DOC facilities to submit to illegal strip and/or body cavity searches.

5.     In October, 2015, Dana Grottano filed a lawsuit alleging that she was illegally searched while visiting an inmate at Rikers Island. Ms. Grottano alleged that on September 1, 2015, during what should have been a routine security pat-frisk, she was strip and/or body cavity searched by a CO at Rikers Island named Yolanda Capers, right in front of her five year old daughter. Ms. Grottano was on Rikers Island that morning to visit an inmate. Although Ms. Grottano walked through the metal detector and was inspected by a K-9 police dog without incident, CO Capers accompanied Ms. Grottano and Ms. Grottano's five year old daughter behind a privacy curtain where, without any reasonable suspicion whatsoever and in brazen violation of the law, she ordered Ms. Grottano to pull down her pants and placed her hand directly on Ms. Grottano's vagina for an extended period. CO Capers then ordered Ms. Grottano to lift her shirt and pull her brassiere away and expose her breast. CO Capers asked Ms. Grottano why she looked nervous. When Ms. Grottano responded that she was "nervous because I've never been through this before," Defendant Capers told her that "this is proper procedure."

2

6. In July, 2015, another individual sued CO Capers, alleging that CO Capers ordered her to enter a private area and remove her clothing and expose her breast and genitalia without cause.  See Pro Se Complaint in Nimra Butt v. Officer Capers, et al., 15 Civ. 5758 (S.D.N.Y.).

7. Last week, yet another individual, named Jeannette Reynoso, filed a notice of claim against the City alleging that Defendant Mayweather and another, unidentified Rikers Island CO illegally strip searched her on October 2, 2015—the same day that Plaintiff A.R. was illegally strip searched in the presence of C.O. Mayweather. According to press reports, Ms. Reynoso had been going to Rikers Island three times a week to visit her husband.  On prior visits, she had never been subjected to more than a pat-frisk search and asked to walk through a metal detector.  But on October 2, after she passed through two metal detectors, Ms. Reynoso was taken into a visitors' search room where two COs ordered her to strip and subjected her to an illegal search.

8. The undersigned has also spoken with numerous other individuals who have described having to submit to random strip and/or body cavity searches while visiting inmates at jails around the City, including the Manhattan Detention Complex and the Brooklyn House of Detention, and as recently as November 22, 2015.

9. These actions constitute an egregious breach of DOC rules and regulations, which impose rigorous requirements upon correction officers who wish to physically search a visitor.  The DOC's Inmate Visit Procedures Directive regarding visitor searches is annexed hereto as Exhibit A.  Section IV(B)(2) of the Directive states that each visitor shall be subject to an electronic search involving a walk-through metal detector. Section IV(C) establishes that, if a visitor has been checked with a metal detector and staff

reasonably believe further inspection is necessary to preclude the introduction of contraband (i.e., the triggering of the metal detector, a suspicious bulge in the visitor's clothing, confidential information, or visitor's documented history of attempting to bring in contraband), the staff member shall immediately notify the area supervisor, who shall evaluate the situation to determine if further inspection for contraband is warranted. If the area supervisor determines that further inspection is warranted, he/she shall notify the Commanding Officer (or his/her designee) and, if given approval by the Commanding Officer, shall give the visitor a Search Consent Report form explaining the reason for the pat-frisk and the pat-frisk process. The DOC Directive establishes that the pat-frisk search should be conducted by patting the outer clothing over the entire length of the visitor's body. The DOC Directive makes it clear that the visitor's "skin shall be touched only at the shirt-sleeves and collar." The DOC Directive also requires that, in conducting a search, "officers shall strive to preserve the dignity of the visitor being searched."

10. Plaintiff brings this civil rights class action pursuant to the United States Constitution, as amended, and the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff seeks redress for Defendants' deprivation, under color of state law, of Plaintiff's and the class's rights, privileges, and immunities secured by the Constitution and laws of the United States.

11. Defendants have instituted and are continuing to enforce a policy, practice and custom pursuant to which strip and/or body cavity searches are routinely conducted wholly absent probable cause and/or reasonable suspicion as required by the United States Constitution. Defendants' policy, practice and/or custom of conducting strip/body cavity searches absent reasonable suspicion and/or probable cause is inflicted on a class

of persons who are visiting DOC facilities and strip and/or body cavity searched. Conducting strip and/or body cavity searches on persons, including the Plaintiff and those similarly situated, without particularized suspicion borne of the facts on an individual case, is humiliatingly invasive, degrading, unconstitutional, and flatly prohibited by settled law.

12.     Plaintiff and the class seeks (1) declaratory judgment that a strip and/or body cavity search of a person visiting a DOC facility, absent reasonable suspicion and/or probable cause to believe that that individual is secreting contraband, is unconstitutional; (2) an order enjoining Defendants from implementing or enforcing their policy, practice and custom of conducting strip and/or body cavity searches in the absence of particularized reasonable suspicion; (3) compensatory damages for the injuries caused by Defendants' unlawful conduct; and (4) punitive damages assessed to deter such intentional or reckless deviations from well-settled constitutional law.

## JURISDICTION and VENUE

13.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

14.     The jurisdiction of this Court is predicated upon 28 U.S.C. § 1331, 1343(4), and 2201.

15.     Venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

16.     Plaintiff A.R. is a resident of New York, New York.  Plaintiff A.R. wishes to proceed anonymously and uses her initials to protect her privacy.  Plaintiff A.R. will forthwith make an application to the Court to proceed anonymously.

17. Defendant City of New York is a municipality organized and existing under the laws of the State of New York.  At all times relevant hereto, the City, acting through its DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all correctional matters and for the appointment, training, supervision, and conduct of all DOC personnel.  In addition, at all times material herein, Defendant City was responsible for ensuring that its personnel obeyed the Constitution and laws of the United States.

18. Defendant Joseph Ponte is DOC Commissioner.  As DOC Commissioner, he is responsible for the development, implementation and enforcement of all DOC practices and policies, and, as such, was at all times material herein a policy-maker with respect to the treatment of those visiting DOC facilities.  He was likewise responsible for the training and supervision of DOC personnel, and the overall administration of DOC facilities.  Defendant Ponte is sued individually and in his official capacity.

19. Correction Officer Mayweather is and/or was at all relevant times an employee of the City of New York Department of Correction, working at Rikers Island in East Elmhurst, New York.  Defendant Mayweather is sued individually and in her official capacity.  Defendant Mayweather's first name is currently unknown.

20. Defendant "JOHN and JANE DOE CORRECTION OFFICERS 1-25" were at all times material herein Correction Officers working in DOC facilities, who implemented, enforced and effectuated the strip/body cavity search policies that are the subject of this action, acting in the capacity of agents, servants and employees of Defendant Ponte and the City, and within the scope of their employment as such.  Plaintiff is unable to determine the names of these Defendants at this time, so they are sued under a fictitious

6

designation. JOHN and JANE DOE CORRECTION OFFICERS 1-25 are sued in their individual and official capacities.

## CLASS ALLEGATIONS

21. Plaintiff and the putative class seek a declaration that strip and/or body cavity searches of persons visiting DOC facilities, absent particularized reasonable suspicion and/or probable cause to believe that the visitor is secreting contraband, is unconstitutional; an order enjoining Defendants from conducting such unconstitutional strip/body cavity searches; compensatory damages for the injuries caused by Defendants' unconstitutional policy; and punitive damages.

22. Plaintiff sues on behalf of herself and all other similarly situated individuals and seeks to represent a class comprised of all persons who have visited or will be visiting a DOC facility and were and/or will be strip and/or body cavity searched pursuant to Defendants' unconstitutional policy, practice and/or custom of strip and/or body cavity searching visitors without particularized reasonable suspicion and/or probable cause.

23. The class period commences on the date three years prior to the filing of this Complaint, and extends to the date on which Defendants are enjoined from, or otherwise cease, implementing or enforcing their unconstitutional policy, practice and/or custom of conducting strip searches and/or body cavity searches of visitors to DOC facilities without particularized reasonable suspicion and/or probable cause.

24. The members of the class are so numerous as to render joinder impracticable. Upon information and belief, there are and continue to be hundreds of persons visiting DOC facilities who are strip and/or body cavity searched without particularized reasonable suspicion and/or probable cause, all of whom are members of the class, and all

of whose federal and state constitutional rights have been or will be violated by the policy, practice and/or custom of routinely strip searching persons who are visiting DOC facilities irrespective of whether particularized reasonable suspicion and/or probable cause exists.

25. The questions of law and fact common to the class include whether the class members have common rights under the United States Constitution to be free from unconstitutional strip and/or body cavity searches, and that Defendants' conduct in routinely strip and/or body cavity searching without particularized reasonable suspicion and/or probable cause violated those rights.

26. Plaintiff is an adequate class representative. The violations of law alleged by the Plaintiff stem from the same course of conduct by Defendants that violated and continue to violate the rights of members of the class. Moreover, the legal theory under which the named Plaintiff seeks relief is the same or similar to that on which the class will rely. Moreover, the harm suffered by the named Plaintiff is typical of the harm suffered by the absent class members. Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class.

27. Plaintiff is represented by Giskan Solotaroff Anderson & Stewart LLP ("Giskan Solotaroff"). Giskan Solotaroff specializes in civil rights cases and class actions. Giskan Solotaroff has litigated a variety of actions against governmental entities and their employees. Giskan Solotaroff has the resources, expertise and experience to prosecute this action. Counsel for Plaintiff know of no conflicts among members of the class or between the firm and members of the class.


28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because (a) the prosecution of hundreds of separate actions would be inefficient and wasteful of legal resources; (b) the members of the class may be scattered throughout New York State and the tri-state area and are not likely to be able to vindicate and enforce their constitutional and statutory rights unless this action is maintained as a class action; (c) the issues raised can be more fairly and efficiently resolved in the context of a single class action than piecemeal in many separate actions; (d) the resolution of litigation in a single forum will avoid the danger and resultant confusion of possible inconsistent determinations; (e) the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individuals pursuing claims against Defendants which would establish incompatible standards of conduct for Defendants; (f) Defendants have acted and will act on grounds applicable to all class members, making final declaratory and injunctive relief on behalf of all members necessary and appropriate; and (g) questions of law and/or fact common to members of the class especially on issues of liability predominate over any questions that affect individual members.

## FACTS

29.     The United States Constitution prohibits state officials from performing strip and/or body cavity searches on visitors to jails and/or prisons without particularized reasonable suspicion and/or probable cause to believe that the visitor is concealing a weapon or other contraband.

30. Defendants know and at all times material herein have known that they may not institute, enforce, or permit enforcement of a policy or practice of conducting strip and/or body cavity searches without particularized reasonable suspicion and/or probable cause.

31. Defendants' policy, practice and/or custom of routinely strip and/or body cavity searching visitors to DOC facilities without regard to particularized reasonable suspicion and/or probable cause has been promulgated, effectuated and enforced in bad faith and contrary to clearly established law.

32. Reasonable suspicion and/or probable cause may only arise from the particular circumstances antecedent to a search.

33. In clear defiance of constitutional requirements, Defendants have promulgated, implemented, enforced, and failed to rectify a policy, practice and/or custom mandating the strip and/or body cavity search of visitors to DOC facilities without any requirement of reasonable suspicion and/or probable cause, or indeed any suspicion of any sort. This policy made the random strip searching of visitors routine.

34. Estimating conservatively, hundreds of persons have been or will be unconstitutionally strip and/or body cavity searched, absent an inquiry into or the establishment of particularized reasonable suspicion to justify the strip and/or body cavity search, pursuant to the policy described above.

35. As a direct result of the unlawful strip and/or body cavity searches conducted pursuant to the policy, each victim of these unlawful strip and/or body cavity searches—each member of the class, including the named Plaintiff—has suffered or will suffer psychological pain, suffering and mental anguish.

*Plaintiff A.R.'s Experiences*

36. On October 2, 2015, Plaintiff A.R. came to Rikers Island to visit an inmate.

37. Plaintiff A.R. entered Rikers Island through the George Motchan Detention Center ("GMDC") building.

38. Plaintiff A.R. had visited the GMDC approximately 3 or 4 times prior and was always made to walk through a metal detector—which she always did, without incident—before being allowed to proceed to the visiting area.

39. On the prior occasions, after walking through the metal detector, Plaintiff A.R. was asked to remove her shoes, pull up her pant legs to her calves, flip out her pockets, and pull out her brassiere from over her shirt. The guards that searched her on those prior occasions never came close to Plaintiff A.R. during the searches and never touched her.

40. On October 2, however, things proceeded differently. Plaintiff A.R. walked through the metal detector without incident, as she had before. The metal detector did not indicate anything.

41. Nevertheless, a CO that Plaintiff A.R. had never encountered before directed Plaintiff A.R. behind a privacy curtain and told her that she would be "pat-frisked" and checked to make sure that she did not have anything on her.

42. The CO ordered Plaintiff A.R. to remove her shoes, remove her socks, and pull her pants down to her thighs, exposing Plaintiff A.R.'s underwear.

43. The CO then pulled-out the band of Plaintiff A.R.'s underwear with her finger and looked down her underwear from the front

44. The CO then kneeled behind Plaintiff A.R. and swept her hand from the front to the back of Plaintiff A.R.'s crotch while pulling Plaintiff A.R.'s underwear aside.

11

45. The CO then asked Plaintiff A.R. to remove her brassiere and expose her breasts.

46. Plaintiff A.R. was then told to dress and she proceeded to the visiting area.

47. Defendant Mayweather was present throughout and directly observed Plaintiff A.R.'s illegal search and did nothing to intervene or otherwise stop the illegal conduct.

48. Defendant Mayweather and the unidentified CO who searched Plaintiff A.R. had no reasonable suspicion and/or probable cause to believe that A.R. was secreting contraband.

49. After the visit, Plaintiff A.R. overheard the CO who searched her say that "they can't say that we didn't go hard in this bitch today."

50. As a direct and proximate result of the unlawful search conducted pursuant to Defendants' policy, practice and/or custom, A.R. has suffered and continues to suffer psychological pain, suffering and mental anguish.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Claims Pursuant to 42 U.S.C. § 1983 for**
**Violation of the Fourth and Fourteenth Amendments)**

51. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

52. By implementing, promulgating, and continuing to enforce and/or effectuate a policy, practice and/or custom pursuant to which Plaintiff and the class were or will be strip and/or body cavity searched absent the requisite particularized reasonable suspicion and/or probable cause, Defendants have deprived and will continue to deprive each and every Plaintiff and member of the class of rights, remedies, privileges and immunities guaranteed to every citizen and resident of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution—including but not limited to the right to bodily integrity and the right

12

against unreasonable searches—conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

53. Defendants acted under pretense and color of state law in their individual and official capacities and within the scope of their employment. Said acts by said Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

54. All acts by the individual Defendants were carried out with the full knowledge, consent and cooperation of the City of New York. The City, by its policymaking agents, authorized and ratified the individual Defendants' wrongful acts, failed to prevent or stop those acts, and/or allowed or encouraged those acts to continue. Moreover, the actions of the individual Defendants resulted from, and were in accordance with a de facto policy and/or well-settled and widespread practice and custom of the City.

55. As a direct and proximate result of the misconduct and abuse of authority detailed above, each and every Plaintiff and class member has suffered and continues to suffer psychological pain, suffering and mental anguish.

## PRAYER FOR RELIEF

56. WHEREFORE, Plaintiff asks this Court

    a. To enter an order certifying this action as a class action pursuant to Fed. R. Civ. P. 23(a) and b(2) and b(3) for the class as described herein and naming Plaintiff herein as the class representatives.
    b. To enter a judgment declaring unconstitutional Defendants' policy, practice, and/or custom of strip and/or body cavity searching visitors to

      DOC facilities even in the absence of particularized reasonable suspicion and/or probable cause that such person is concealing contraband.

c. To issue an order enjoining Defendants from implementing or enforcing the aforesaid unconstitutional policy, practice and/or custom.

d. To award Plaintiff and members of the class compensatory damages in an amount to be determined at trial, plus prejudgment interest.

e. To award Plaintiff and members of the class punitive damages against all Defendants in their individual capacities except for the City of New York, in an amount to be determined at trial, plus prejudgment interest.

f. To award Plaintiff and members of the class reasonable attorneys' fees and costs under 42 U.S.C. §§ 1988 and 1920.

g. To grant such other and further relief to Plaintiff and members of the class as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: New York, NY
       November 23, 2015

          **GISKAN SOLOTAROFF ANDERSON & STEWART LLP**

BY: _R. Audain_
        Raymond Audain
        Oren Giskan
        Aliaksandra Ramanenka
        11 Broadway, Suite 2150
        New York, NY 10004
        (646) 336-4904

*Attorneys for Plaintiff and the class*