G2h6arc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

A.R., *individually and on
behalf of all others
similarly*,

                    Plaintiffs,

            v.                              15 CV 9242(RMB)

THE CITY OF NEW YORK, *et al.*,

                    Defendants.

------------------------------x
                                        New York, N.Y.
                                        February 17, 2016
                                        10:15 a.m.

Before:

                    HON. RICHARD M. BERMAN,

                                        District Judge

                          APPEARANCES

GISKAN, SOLOTAROFF & ANDERSON & STEWART, LLP
     Attorneys for Plaintiffs
BY:  RAYMOND AUDAIN
     SCOTT SIMPSON


THE NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants
BY:  ARTHUR LARKIN

G2h6arc

1          (Case called; in open court)

2          THE COURT:  Please be seated.

3          There are a few things on my agenda and perhaps yours

4     as well.  Why don't we start by your telling me what the status

5     of the case is.

6          MR. SIMPSON:  At this point, your Honor, we served

7     document requests.  We're waiting responses to those.

8     Otherwise, not much has happened in the case.

9          THE COURT:  Do you have a case management plan?

10          MR. SIMPSON:  Pardon?

11          THE COURT:  Do we have a case management plan?

12          MR. SIMPSON:  Yes, your Honor.

13          THE COURT:  Are you proceeding according to that

14     schedule?

15          MR. SIMPSON:  We are proceeding according to that

16     schedule.  We have until the middle of June to complete

17     discovery.

18          THE COURT:  Any settlement discussions or no?

19          MR. SIMPSON:  I think those would be premature.  I

20     think we have such different understandings about what this

21     case is about.  I don't think settlement discussions at this

22     point will be very productive.

23          THE COURT:  You are seeking class status; is that

24     right?

25          MR. SIMPSON:  Eventually, yes.

G2h6arc

1          THE COURT:  Eventually, meaning when?

2          MR. SIMPSON:  Meaning once we get a little bit of

3    class discovery and we anticipate moving for class

4    certification at that point.  At this point I don't think we're

5    in a position to move for class certification.  That is about

6    it from your point of view.

7          THE COURT:  Do you have anything else?

8          MR. SIMPSON:  No, other than the proposed motion.

9          THE COURT:  We'll hear from the proponent of the

10   motion first.

11         MR. SIMPSON:  Also, we made an application to proceed

12   anonymously.

13         THE COURT:  We'll get to that.

14         MR. SIMPSON:  Okay.

15         THE COURT:  So I don't quite understand how we do

16   that.  That's not really true that I don't understand.  I

17   understand how one would do that.  It's not generally speaking

18   my practice to do anything anonymous.  Sometimes when we have

19   in a criminal case with a cooperator, we keep that under wraps

20   for safety reasons.  In a civil action, particularly that

21   purports to be a class action, it is not quite clear to me that

22   that is appropriate.  If there is motion practice, we'll let

23   each side brief that issue in the motion practice.

24         MR. SIMPSON:  Okay.

25         THE COURT:  So is there motion practice?  You want to

G2h6arc

| | |
|---|---|
| 1 | make a motion to dismiss? |
| 2 | MR. LARKIN:  Partial motion, your Honor. |
| 3 | THE COURT:  Let me tell you what the other rules are. |
| 4 | Partial, there is no other part.  So if you have anything else |
| 5 | with respect to a motion to dismiss, now is the time. |
| 6 | Otherwise the next time I hear from you would be summary |
| 7 | judgment. |
| 8 | MR. LARKIN:  Right.  Understood, your Honor.  I think |
| 9 | the first point that I would like to make is the commissioner, |
| 10 | Commissioner Ponte, publically said that searches, strip |
| 11 | searches of visitors generally are not permitted by DOC policy |
| 12 | and he's concerned -- he would be concerned if there were even |
| 13 | one such incident to have occurred. |
| 14 | THE COURT:  And we have a class full of them. |
| 15 | MR. LARKIN:  Well, what we have, your Honor, in the |
| 16 | complaint is allegations by three individuals that there were a |
| 17 | total of eight or nine searches that they can state from their |
| 18 | own personal knowledge of or information of eight or nine |
| 19 | searches, five of which were strip searches and three or four |
| 20 | which were not strip searches and were not alleged to have |
| 21 | violated the Constitution or to have violated a visitors' |
| 22 | rights.  When you consider the number of searches that occur -- |
| 23 | excuse me, the number of visits that occur to Rikers Island |
| 24 | every day, numbers like that are just not sufficient to state a |
| 25 | Monell claim. |

G2h6arc

1              THE COURT:  Wait.  You just said the Commissioner

2    feels that even one such search would be --

3              MR. LARKIN:  No, no.

4              THE COURT:  -- would be something terrible and against

5    policy.  Now you are saying five were insignificant?

6              MR. LARKIN:  No.  No.  I am not saying it is

7    insignificant.  I am not saying it is insignificant.  I am

8    saying it is not enough to make out a pattern or practice claim

9    against the city.  The *Twombly Iqbal* line--

10             THE COURT:  What if he comes up with a class of 50 or

11   60 or 70 people?  That is why presumably he is calling it a

12   class action because he thinks there may be more.

13             MR. LARKIN:  They can call it whatever they want and

14   they can think there may be more.  It is not material to

15   assessing the sufficiency of this complaint.

16             Now, plaintiff has as understand it --

17             THE COURT:  The question is whether it is appropriate

18   to do that at this point in time until he knows a little bit

19   more.

20             MR. LARKIN:  We think that respectfully, your Honor --

21             THE COURT:  Respectfully.

22             MR. LARKIN:  -- it is because the cases caution -- the

23   *Twombly Iqbal* line of cases caution against letting a massive,

24   factual controversy to proceed with the goal of weeding out

25   insufficient claims at the summary judgment stage.  The whole

G2h6arc

1    point of the *Twombly Iqbal* --

2              THE COURT:  I don't get the point you are making.  You

3    are saying the Commissioner --

4              MR. LARKIN:  I am saying --

5              THE COURT:  Hold on.

6              You are saying that this doesn't happen.  So maybe if

7    it happened on four or five cases, aberrational; right?  That

8    is what you are saying.

9              MR. LARKIN:  Essentially.

10             THE COURT:  What are we weeding out?

11             MR. LARKIN:  We're weeding out the Monell claim and

12   the discovery attendant to a Monell claim, which because the

13   complaint does not adequately state the Monell claim

14   sufficiently.  We're not moving at this time to dismiss the

15   individual plaintiffs' claims.  They may very well have claims

16   for damages.

17             THE COURT:  I get it.

18             MR. LARKIN:  They may very well be able to prove that

19   their rights were violated on the occasions that they say they

20   were violated; but in terms of pleading facts to support a

21   municipal policy, you have got to show a lot more than a

22   handful of incidents when your sort of universe interactions

23   between law enforcement and the citizens number in the hundreds

24   or the thousands -- the thousands -- every year.  Three, four,

25   five is simply not enough.

G2h6arc

1          THE COURT:  I get it.  So at some point if that is the

2     universe that is what you are going to say.  I get that.  I

3     don't know what we're weeding out.

4          MR. LARKIN:  Well, what we're weeding out is we're

5     getting rid of the Monell claims.  The Monell claims should not

6     proceed through discovery and trial.  That is our position

7     respectfully, your Honor.

8          THE COURT:  Forget trial.  Forget trial.  Why

9     shouldn't they go a little further in discovery when he is

10    purporting to bring a class action and he is trying to figure

11    out who is in his class?

12         MR. LARKIN:  Because the allegations in support of the

13    policy claim, the claim that there is a policy, are conclusory.

14    There are raw conclusions.  Raw conclusions not facts, your

15    Honor.

16         THE COURT:  I get it.  I get it.  At some point that

17    may be persuasive.  I think it is a little early for the moment

18    because he has purporting to bring a class action here to

19    figure out whether there is a Monell problem or not.  It's a

20    little early.  I don't see the harm done.

21         MR. LARKIN:  There is a lot of harm done.  The burden

22    of discovery should not be borne by the municipal defendant or

23    any defendant unless the plaintiff can plead the claims

24    sufficiently in the complaint --

25         THE COURT:  Oh, I see.

G2h6arc

1         MR. LARKIN:  -- that is unless you can plead the facts

2    sufficiently in the complaint before you can take the

3    discovery.  So we've agreed now or we've --

4         THE COURT:  What does he have to plead that he didn't

5    plead already?

6         MR. LARKIN:  Sufficient facts to show a practice of

7    strip searching visitors in ways that violate the Constitution

8    either through an official policy pronouncement by a

9    policymaker or by sufficient number of incidents to demonstrate

10   that the practice is persistent and widespread throughout the

11   jails and that is sort of the norm and that policymakers are on

12   actual constructive notice that the practice is ongoing.

13        THE COURT:  All right.

14        MR. LARKIN:  So we're proceeding in discovery, your

15   Honor, with regard to the underlying claims, the three named

16   plaintiffs and their damages claims.  With respect to the

17   Monell claim, we do have we think legitimate concerns which is

18   why we're raising them at this stage.

19        THE COURT:  So I am trying to figure out what those

20   concerns are.  Because if the Commissioner is right and then if

21   he, the plaintiff, asks you, Have there been any other strip

22   searches reported in the city correction system," you are going

23   to say, No, because everyone follows the Commissioner's policy

24   of not doing these kinds of searches.  If you come back and

25   say, Well, having looked there is about thousand of them, for

1    example, then your argument is not so strong, is it?

2              MR. LARKIN:  Respectfully, your Honor, I think that is

3    putting the cart before the horse.  You've got to have a

4    good-faith basis to take discovery in the first place.  You

5    can't have, it seems to me, three plaintiffs come into court

6    and say, We were all strip searched some of the time and some

7    of the time we were not strip searched and the strip searches

8    violated our rights and we think there is a class of people out

9    there based on just our experience and therefore we want to

10   take discovery, full discovery, on every single search of every

11   single visitor in the last three years to the Rikers Island

12   jails.  The City now has to collect all of those documents and

13   produce all of those witnesses for deposition and bear a vast

14   and substantial burden, which is precisely the concern that

15   animated the court, the Supreme Court, in the *Twombly* and *Iqbal*

16   decisions, which is you have to plead more than what you have

17   here.

18              If I can give an example:  The use-of-force class

19   action that we just litigated before Judge Swain and Magistrate

20   Judge Francis, plaintiffs were represented by the Legal Aid

21   Society and by two law firms, and the facts that were pleaded

22   involved prior lawsuits which were public knowledge.  They

23   involved not only prior class action lawsuits from individual

24   jails but also individual claimants, individual plaintiffs who

25   had been involved in uses of force that had settled for

G2h6arc

1    substantial amounts of money.  There were claims about expert

2    facts pleaded about prior expert assessments of the way force

3    was used in the city jails and allegations by 12 plaintiffs

4    that they were subjected to excessive force similar to the ways

5    that others in the past had been subjected to excessive force.

6    The content of the complaint was substantially different than

7    the content of this complaint, which is sparse when you

8    consider the kind of discovery that would be required to

9    address the Monell claims.  I certainly don't want to waste the

10   Court's time.

11            THE COURT:  Here is what I think is a happy

12   compromise:  Why don't we set a deadline for the plaintiffs to

13   move for class certification and then in the opposition,

14   because I assume you will oppose that, you'll say, It shouldn't

15   be a class and for good measure there shouldn't be a Monell

16   claim.  We'll do it at that time.  So what is a reasonable time

17   for you to figure that out?  He is not wrong.  You should know

18   if you have a class or you don't have a class as opposed to

19   speculating that you do.

20            MR. SIMPSON:  Well, I think part of it is whether we

21   can ascertain a class.  I don't think that we can do that

22   without limited class discovery.

23            THE COURT:  So it is limited; right?  You are supposed

24   to know if you bring a securities case then you represent

25   everybody who bought Class A shares in Time Warner during the

G2h6arc

```
 1  class period of these two years, right, and you allege that

 2  your plaintiff or claimants are representative of all those

 3  people because there was a false statements and it impacted

 4  everybody in the class during that class period.  You need to

 5  figure that out.

 6          MR. SIMPSON:  Are you contemplating discovery or no

 7  discovery?

 8          THE COURT:  In order to make a motion, you are

 9  entitled to class discovery, sure.  So I don't know what

10  exactly that entails.

11          MR. SIMPSON:  Well, depending on when the City can

12  expect to produce some class discovery.

13          THE COURT:  Did you make --

14          MR. SIMPSON:  The request?

15          THE COURT:  Yes.

16          MR. SIMPSON:  Yes.

17          THE COURT:  So your class discovery issues are on the

18  table?

19          MR. SIMPSON:  Our class discovery issues are on the

20  table, yes.

21          THE COURT:  Did you respond?

22          MR. SIMPSON:  They haven't responded yet.

23          MR. LARKIN:  We received discovery demands yesterday.

24          THE COURT:  Oh, all right.

25          MR. LARKIN:  Rule 34 discovery demands.  We also
```

G2h6arc

1    received two weeks ago, your Honor, subpoenas that went to the

2    Department of Investigation and the Board of Correction, which

3    we're going to treat as a Rule 34 discovery demand and respond

4    accordingly.  If the Court is contemplating class discovery,

5    what we would do, your Honor, is review the demands closely and

6    figure out and work with plaintiffs' counsel to figure out what

7    discovery is necessary for the class allegations opposed to the

8    merits allegations and we'll focus on that for the time being.

9             THE COURT:  We'll get to the same point.  There might

10   be a more efficient way to do it.  I am going to refer this

11   discovery issue to Judge Maas.

12            MR. SIMPSON:  Judge Fox is on the case.

13            THE COURT:  Yes, you are right.  You can have 30 days

14   to wrap that up.

15            MR. LARKIN:  Okay.

16            THE COURT:  Then we'll have you back here in late

17   March and see where you stand.  This is without prejudice to

18   anybody's right to make a motion on any aspect of the case.

19            MR. SIMPSON:  Your Honor, if it is all the same, may I

20   ask for a date in the first week of April?

21            THE COURT:  Sure.  The first week of April is April 4.

22   Actually, you can't.  I have a trial that starts April 4.  It

23   has to be in March.

24            MR. SIMPSON:  I will accommodate the Court's schedule.

25            THE COURT:  So let's say March 22.  Let's get back

G2h6arc

```
 1  together on March 22 at 10:00.  We'll talk about a motion for

 2  class certification at that time.  If there is going to be one,

 3  we'll set a schedule.

 4          As to proceeding anonymously since we don't have a

 5  motion schedule, why don't you give me a two- or three-page

 6  letter application.

 7          MR. SIMPSON:  I believe I did, your Honor.

 8          THE COURT:  With authorities?  Do we have that?

 9          MR. SIMPSON:  Yes.

10          MR. LARKIN:  Yes.

11          THE COURT:  You responded?

12          MR. LARKIN:  We did reply, your Honor, yes.

13          THE COURT:  That is adequate for me to rule on.

14          MR. SIMPSON:  The last time we met, your Honor said

15  that you would rule based on those submissions.

16          THE COURT:  Okay.  I forgot.  I will do just that.

17  That's it for me.  Our deadline for class discovery is 3-16,

18  March 16.  You are to deal with any problems or issues with

19  Judge Fox in the interim and on 3-22 at 10:00 we'll talk about

20  if there is a basis for a motion for class certification.

21          MR. SIMPSON:  One more thing, your Honor.  We would

22  like to add a fourth class representative.  Can we amend the

23  claim?

24          THE COURT:  A fourth plaintiff?

25          MR. SIMPSON:  A fourth main plaintiff.  Can we amend
```

G2h6arc

1    the complaint to do so?

2              THE COURT:  Yes.  By they way, based on what you said,

3    do you want to amend the complaint for any other reasons?

4              MR. SIMPSON:  Yes.  We would like to add some more

5    factual allegations.

6              THE COURT:  When would you like to do that by?

7              MR. SIMPSON:  Is 14 days okay?

8              THE COURT:  I would do it in a week.  We have a short

9    schedule.

10             MR. SIMPSON:  That's fine.

11             THE COURT:  Amend the complaint by the 24th.  I am

12   sure you will but you should take seriously his complaints

13   about your complaint defects and see if you cannot fix them.

14             MR. SIMPSON:  I will, your Honor.  I just want to say

15   that I think at this point that the Court's role is to --

16             THE COURT:  I will figure out what the Court's role

17   is.

18             MR. SIMPSON:  Thank you, your Honor.

19             THE COURT:  Nice to see you.

20             MR. LARKIN:  Thank you, your Honor.

21                             o0o

22

23

24

25