```
              G4E5arC
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 3    A.R. individually and on
      behalf of all others similarly
 4    situated,
 5                   Plaintiffs,
 6            v.                              15 Civ. 9242 (RMB)
 7    THE CITY OF NEW YORK, et al.,
 8                   Defendants.
 9    ------------------------------x
10                                            April 14, 2016
                                              11:05 a.m.
11    Before:
12                        HON. RICHARD M. BERMAN,
13                                            District Judge
14                             APPEARANCES
15    GISKAN, SOLOTAROFF & ANDERSON & STEWART, LLP
           Attorneys for Plaintiffs
16    BY:  RAYMOND AUDAIN
           ALIAKSANDRA RAMANUEKA
17
      ZACHARY W. CARTER
18         Corporation Counsel for the City of New York
      BY:  MICHAEL GERTZER
19         Assistant Corporation Counsel
20    KOEHLER & ISAACS, LLP
           Attorneys for Defendant Capers
21    BY:  JULIE ORTIZ
22
23
24
25
```

1        (Case called)

2        THE COURT: So, I think there is a relatively minor
3 issue that we were hoping to resolve today but just remind me,
4 is everybody who is in the case, plaintiff, defendant in
5 particular, everybody has been served now?

6        MR. AUDAIN: No, your Honor.

7        Since we have only recently identified two of the
8 officers, we are going to serve them in the next few days. So,
9 at this point two of the three corrections officers have not
10 yet been served.

11       THE COURT: And that, once you do serve them, then
12 everybody will be served?

13       MR. AUDAIN: That's right.

14       THE COURT: And are they going to be represented by
15 counsel who is here now?

16       MR. GERTZER: Your Honor, presently there is an
17 investigation by DOC into the incidents alleged by plaintiff so
18 the City is not going to be able to represent any of the new
19 defendants until that investigation has been completed.
20 They're going to have to seek independent counsel.

21       THE COURT: Both of the two will have to?

22       MR. GERTZER: Yes.

23       MS. ORTIZ: And without necessarily knowing at this
24 juncture whether or not a conflict exists, if there is a
25 conflict and these defendants are still employed, then would I

1  have to assign conflict counsel?  But I can't make any of those
2  calls until one the City declines to represent; and two, I have
3  a little more information to make a determination on whether or
4  not I can represent them all or they need to be conflicted out.
5           THE COURT:  I'm not sure I understand.  Wait, wait.
6  No, I understand.
7           So, right now the City is not going to represent them,
8  right, because of the pending investigation?
9           MR. GERTZER:  That's correct, your Honor.
10          THE COURT:  Is that right from your point of view,
11 too?
12          MS. ORTIZ:  I guess, your Honor.
13          THE COURT:  Okay.
14          So, then, go ahead.
15          MS. ORTIZ:  How it works is the union gets paid, there
16 is a legal fund and that's how we get paid.  So as long as the
17 officer is still employed and there is benefits being paid, my
18 office would be able to interject on behalf of those defendants
19 but --
20          THE COURT:  These two, presumably who haven't been
21 served yet.
22          MS. ORTIZ:  That's correct.  But, if there is some
23 sort of conflict with the defendant I currently represent --
24          THE COURT:  Right.
25          MS. ORTIZ:  -- then the union assigns what is called

1    conflict counsel, we have like a conflict counsel panel, but
2    that's going to take time to see who can do it, who is
3    available, and get them together.  So, it is not going to be
4    lengthy but it is a process.
5            THE COURT:  So, as a practical matter, let's say they
6    get served in the next couple of days.  Do they know all of
7    this?  Do they know how to get counsel or that you won't be
8    able to represent them immediately and you might not?
9            MS. ORTIZ:  No, your Honor, because when they're
10   served at the facility it depends if the facility gives them in
11   a timely fashion the timely complaint and actually lets them
12   know that, yes, you are being sued.  Now that I am on notice I
13   expedite it and contact the officers and say, hey, this is
14   coming down the pipeline and what not.  The City usually issues
15   a formal declination letter and for purposes of red tape I kind
16   of need that letter in order to then tell the union we have to
17   step in.  And when we have that letter and we step in, that's
18   when I have a brief conversation with the City's counsel to see
19   do you perceive any conflict, if so, then I need to drag in
20   another party to help out.
21           THE COURT:  I got it.
22           So, I am just trying it figure out practically, you
23   must have experienced this before so where an investigation is
24   pending, but normally they know that, right?
25           MS. ORTIZ:  It depends.  If they're not brought in --

1   because if the investigation is pending and they haven't been
2   questioned yet, what is called an MEO-16, it is an interview,
3   they bring them in for fact finding questions, they may not
4   necessarily know there is an investigation, and a lot of times
5   these officers don't or they get questioned like two months
6   ago, they forget, things happen, and then they're like, oh yes,
7   I was a witness -- whatever the hell he -- excuse me, whatever
8   the case may be.
9           THE COURT:  So, I am trying to figure out practically
10  if they'll know what to do -- what is your sense -- when they
11  get served, they get served personally or at facility?
12          MR. AUDAIN:  If they get served at a facility we will
13  endeavor to serve them personally there, though.
14          MS. ORTIZ:  The only thing I can do in order to help
15  expedite is once I know they're going to be served, I then gain
16  their contact information from the union's office and contact
17  them.  I preemptively do so and explain you need to do this,
18  this, and that.  More likely than not there will be
19  declination.  Once I get the declination, these are your next
20  steps.
21          THE COURT:  So will you advise them when service has
22  been made?
23          MR. AUDAIN:  I will.  Yes.  Absolutely.
24          THE COURT:  All right.
25          Anyway, so there is that and so what is the issue, the

1  relatively brief or short issue with respect to the protective
2  order?
3           MR. AUDAIN:  That's right, your Honor.  It is whether
4  or not the three plaintiffs who are proceeding anonymously are
5  going to be covered by this protective order and we would like
6  for them to be covered by the protective order because,
7  although your Honor ruled that they may proceed anonymously, we
8  feel like it is apples and oranges.  That motion was about
9  Federal Rule 10, it was about public disclosure with having to
10 disclose the names of parties, names of people suing to the
11 public.  It has nothing to do with discovery and how discovery
12 materials are handled.
13          THE COURT:  What is the practical import of what you
14 would like to have happen in the discovery with respect to the
15 plaintiffs?
16          MR. AUDAIN:  I would like there to be something
17 controlling how corporation counsel and how anybody else can
18 handle these documents.
19          THE COURT:  That you give to them or they give to you?
20          MR. AUDAIN:  They give to us.
21          THE COURT:  Okay, and control; what do you mean?
22          MR. AUDAIN:  I have no reason to believe anybody would
23 do, but for example now there is nothing precluding them from
24 turning this over to the press, documents that reveal the
25 identities of the individuals.

1          That's an extreme example.

2          THE COURT:  Right.

3          MR. AUDAIN:  They wrote to us and they wrote to the

4  Court talking about vendors because there are some in the

5  documents.

6          THE COURT:  Okay.

7          MR. AUDAIN:  Staff people there.  I have no doubt that

8  Mr. Larkin and Mr. Gertzer wouldn't do anything like that but

9  these vendors may not be as fastidious.

10         THE COURT:  So to accomplish that, what do you

11 specifically propose?

12         MR. AUDAIN:  We propose inclusion of one sentence in

13 the protective order saying any records identifying or

14 revealing identifying information about the three plaintiffs

15 can be considered confidential, or should be considered

16 confidential.

17         THE COURT:  Okay.

18         MR. GERTZER:  Your Honor, there is a couple reasons

19 why we can't agree.  First of all, your Honor's has already

20 issued a ruling considering the confidentiality.

21         THE COURT:  You have to speak slower and louder.

22         MR. GERTZER:  I'm sorry, your Honor.

23         THE COURT:  We need to make sure.

24         MR. GERTZER:  I have had a cold so my voice is softer

25 than it should be.

1        THE COURT:  It is to make sure we get an accurate
2   transcript.
3        MR. GERTZER:  Sure.
4        Your Honor, your Honor has already issued a ruling
5   concerning the confidentiality of those three plaintiffs which
6   we are bound by.
7        THE COURT:  Right.
8        MR. GERTZER:  And we will comply with.
9        THE COURT:  Okay.
10       MR. GERTZER:  The protective order that is before your
11  Honor right now is contemplated to cover not identifying
12  information but personal information, things like employment
13  files, dates of birth, social security numbers.  Things like
14  that.
15       THE COURT:  Okay.
16       MR. GERTZER:  This kind of information is not really
17  supposed to be in the protective order.  We don't --
18       THE COURT:  Wait a minute.  I don't understand what
19  you mean by that.
20       MR. GERTZER:  This kind of protective order doesn't
21  contemplate making -- meaning as confidential -- the identities
22  of the three plaintiffs.  When we enter into these kinds of
23  protective orders --
24       THE COURT:  Right.
25       MR. GERTZER:  -- it is done with the purpose of

1  shielding the personal information of the officers of things

2  like their home addresses, their dates of birth.  Stuff like

3  that.

4          THE COURT:  Okay.

5          MR. GERTZER:  We don't -- pursuant to your Honor's

6  ruling we intend to revisit the question of the confidentiality

7  of those three plaintiffs prior to trial and what we are

8  concerned about is we consent to the inclusion of this

9  paragraph into the agreement that we somehow waived our right

10 to, in the future, revisit that.

11         THE COURT:  So, just say that.  This does not -- he

12 won't object to that.

13         MR. AUDAIN:  We will stipulate to that right now, your

14 Honor.

15         THE COURT:  All I think he is trying to do is to

16 continue the anonymity issue that he raised earlier on and I

17 said the Court went along with and so he is just, out of an

18 excess of caution, wanting to make sure that the anonymity is

19 preserved during the discovery process in the form of

20 documents.

21         I think that's a fair point but yours is also a fair

22 point, that at some point you might say, well, rightly or

23 wrongly you might say I want to argue now that at this stage,

24 as we head to trial, whatever, that we should revisit that and

25 he stipulates that that's okay and that would normally be okay

G4E5arC

1   with me anyway so I don't see exactly what the big problem is.
2            MR. GERTZER:  The final issue that we wanted to raise
3   was that there is a risk of confusion being generated as a
4   result of inclusion of that clause in the protective order
5   because --
6            THE COURT:  Of the clause that he proposes?
7            MR. GERTZER:  Yes.
8            THE COURT:  Or that I proposed.
9            MR. GERTZER:  Well, the clause that he proposes.  I
10  guess maybe I misunderstood.  I know they stipulated on the
11  record that they won't object to us revisiting the question in
12  the future.
13           THE COURT:  Right.
14           MR. GERTZER:  I wasn't clear that your Honor had
15  actually proposed a separate --
16           THE COURT:  No, I meant revisiting in the future.
17           MR. GERTZER:  Right.
18           THE COURT:  Maybe I inappropriately adopted his
19  suggestion or I don't know whose suggestion it was but that's
20  what I was referring to.
21           So, what would be the confusion?
22           MR. GERTZER:  Well, as we set forth in our submission
23  to the Court, your Honor, it sets forth earlier that documents
24  that are publicly available are not to be deemed confidential
25  but there is confusion as to it says any records identifying,

1   identifying or revealing identifying information as to the

2   identity of the three plaintiffs.  It is not entirely clear

3   whether that means documents outside of what we would be

4   producing.  It generates all kinds of confusion, your Honor.

5           THE COURT:  It looked pretty straightforward to me.

6   It has their name on it, their names on it or I guess some

7   other way to identify them.  They would be confidential.

8           Right?  Isn't that the point?

9           MR. AUDAIN:  That is the point, your Honor.  And the

10  specter of confusion I think is overstated.  I think we can

11  take up any issue that may arise once it does arise.

12          THE COURT:  I agree with that.

13          So, if you have a doubt, first of all, I think we can

14  live with this language with that modification which is already

15  stipulated on the record, and if at a future time there is some

16  actual doubt as particular documents, first of all the first

17  thing you can do is talk to each other and see if you can't

18  resolve it, right?  And barring that, go to the magistrate

19  judge if it's still -- and I suppose there could be a situation

20  where it is not clear to defense counsel whether a document is

21  in or out of that -- this would become I think, (i) in the

22  order.

23          So, in the first instance he would call you and say I

24  have got these documents here if you want to look at them and

25  you could see if you can agree whether they are or they aren't,

1  and if there is a further disagreement after the pile has been
2  whittled down to one document, let's say hypothetically, you
3  can't agree on that, go to the magistrate judge, and he or she
4  will interpret the order and look at the document.
5           MR. AUDAIN:  I think that's absolutely right, your
6  Honor.
7           THE COURT:  Okay.  I think we have a solution, right?
8           Is that fair?
9           MR. AUDAIN:  Absolutely.
10          THE COURT:  Is that fair to you?
11          MR. GERTZER:  Sounds fair to me, your Honor.
12          THE COURT:  Okay.  So, you will take care of the --
13 oh, do I have to -- do you want me to revise this document?  Is
14 it before me for signature?
15          MR. AUDAIN:  Not yet.  We only submitted the draft so
16 we will finalize it and submit it the to the Court.
17          THE COURT:  So you meet and confer, finalize it, and
18 submit it jointly to me.
19          MR. AUDAIN:  Yes, sir.
20          THE COURT:  Fair enough.
21          And you know, by the way, I don't know if it is in
22 here or not, so typically I add a provision about protective
23 orders that doesn't bind the Court.  The Court determines that
24 something should be made public, etc., etc. as an exhibit or at
25 trial, or I suppose for some other reason as well, and we would

1   add that at the end.  In fact, we can give you the language
2   that we, use boiler plate language.
3            MR. AUDAIN:  I this is think it is reflected in your
4   individual rules.
5            THE COURT:  Yes.  So you can incorporate it.  Maybe it
6   is in here already.
7            MR. AUDAIN:  I'm not sure about that but I do know if
8   we are talking about the same clause there is language in your
9   individual rules about it.
10           THE COURT:  Well, Jason will help you out.
11           MR. AUDAIN:  Okay, great.
12           THE COURT:  So, where are we then in the bigger scheme
13   of things?  You are going to serve these two people this week?
14           MR. AUDAIN:  We are going to serve these two people
15   this week.  We are waiting for a pile of documents, I think, as
16   soon as this protective order is in place.  I think otherwise,
17   so far so good.
18           THE COURT:  Is there any sort of time frame for these
19   investigations that might be going on.
20           MR. GERTZER:  The investigation began, I think, in
21   January.  Typically they take -- they have up to 18 months.
22           THE COURT:  Oh, they do.
23           MR. GERTZER:  To complete it.  So, we are looking at
24   we are at the beginning of it.
25           THE COURT:  Okay.  Well good.  I consider that a

G4E5arC

1  successful conference today.
2          MR. AUDAIN:  Well, there is one more issue, your
3  Honor.
4          THE COURT:  Oh.
5          MR. SIMPSON:  Yes, Judge.  One more.
6          THE COURT:  Talk too soon.
7          MR. SIMPSON:  Judge, I wanted to loop the Court in.
8          On March 24th we -- plaintiffs -- sent a letter to
9  Mr. Gertzer and Mr. Larkin from Corp counsel, it was a
10 preservation letter.  We wanted to let the Court know that on
11 March 20th another woman was strip searched and endured a body
12 cavity search at a DOV facility, which he came to us and we did
13 send a letter requesting that the City preserve any video
14 surveillance of the search, or if none such exists, of the
15 individual's visit which would show her very distraught and
16 upset.
17         THE COURT:  Which what?
18         MR. SIMPSON:  Which would show her very distraught and
19 upset.  I know that the City is in receipt of that and we
20 wanted to note that we believe we have other evidence that
21 shows that this practice is continuing even some four months
22 after this lawsuit was filed.
23         THE COURT:  Okay.  That's fair.  That point is well
24 taken.
25         So, do you know, to your knowledge, is the practice

G4E5arC

1  still going on or not going on?  You are saying it is.  I mean
2  is it formally going on or --
3          MR. GERTZER:  You are asking me, your Honor?
4          THE COURT:  Yes, if you know.
5          MR. GERTZER:  From our point of view there is no such
6  practice.
7          THE COURT:  I see.
8          MR. GERTZER:  The practice is that they are committed
9  to conduct a pat frisked search of a closed visitor.
10         THE COURT:  And that's what's happening.  I see, fair
11 enough.
12         All right.  Nice to see you.
13         Do we have a next date?  I don't remember.
14         MR. AUDAIN:  I think we do in May, your Honor.
15         THE COURT:  All right.  Good.
16                              o0o