## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANA GROTTANO, N.D., A.R. and D.M., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF NEW YORK; THE CITY OF NEW YORK DEPARTMENT OF CORRECTION COMMISSIONER JOSEPH PONTE; CORRECTION OFFICER YOLANDA CAPERS; CORRECTION OFFICER ERICA MAYWEATHER; CORRECTION OFFICER THOMASENA GRAHAM; and JOHN AND JANE DOE CORRECTION OFFICERS 1-25, <br><br> Defendants. | 15-cv-9242 (RMB) (KNF) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ...................................................................................2

PROCEDURAL BACKGROUND ...........................................................................4

PROPOSED SETTLEMENT ..................................................................................4

I.      Class Definition ...........................................................................................4

II.     Definitions....................................................................................................5

III.    Proposed Settlement Terms ........................................................................5

        A.      Monetary Relief ...............................................................................5

        B.      Injunctive Relief...............................................................................6

        C.      Plaintiffs' Service Awards and Class Counsels' Fees .................8

        D.      Notice ...............................................................................................9

        E.      Proposed Settlement Approval Schedule .......................................9

STANDARD.........................................................................................................9

ARGUMENT ......................................................................................................10

I.      The Requirements of Rule 23(a) Are Satisfied.........................................10

        A.      The Class is Sufficiently Numerous ..............................................10

        B.      Questions of Law or Fact Are Common to the Class ...................11

        C.      Plaintiffs' Claims Are Typical .......................................................12

        D.      Named Plaintiffs Will Fairly and Adequately Protect the Class's Interests .........................................................................................13

II.     The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied................................14

A.     Common Questions of Law or Fact Predominate as to Plaintiffs' Claims .......................................................................................14

B.     A Class Action is the Superior and Most Efficient Method for Adjudicating this Action ...........................................................15

III.   The Court Should Approve the Proposed Notice and the Procedure for Notifying the Settlement Class Members.........................................17

CONCLUSION.................................................................................18

**TABLE OF AUTHORITIES**

**CASES**                                                                                                      **PAGE(S)**

*A.T. v. Harder*,
    298 F. Supp. 3d 391 (N.D.N.Y. 2018)..................................................................................16

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)......................................................................................................10

*Ayers v. SGS Control Servs.*,
    No. 03 Civ. 9078, 2008 U.S. Dist. LEXIS 69307 (S.D.N.Y. Sep. 8, 2008) ...........................10

*Ayzelman v. Statewide Credit Servs. Corp.*,
    238 F.R.D. 358 (E.D.N.Y. 2006).....................................................................................10

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)......................................................................................13, 15

*Butler v. Suffolk County*,
    289 F.R.D. 80 (E.D.N.Y. 2013)..................................................................................11, 15

*Casale v. Kelly,* Order Approving the Jan. 26, 2012 Stipulation of Settlement,
    No. 1:08-cv-02173-SAS (S.D.N.Y. Dec. 21, 2012), ECF No. 113 ..........................................9

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).............................................................................................11

*Daniels v. City of N.Y.,*
    198 F.R.D. 409 (S.D.N.Y. 2001) ....................................................................................12

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005).......................................................................................12

*Floyd v. City of N.Y.*,
    283 F.R.D. 153 (S.D.N.Y. 2012)..................................................................................11, 3

*In re Joint E. & S. Distr. Asbestos Litig.*,
    78 F.3d 764 (2d Cir. 1996).............................................................................................13

*Leyva v. Medline Indus. Inc.,*
    716 F.3d 510 (9th Cir. 2013) ..........................................................................................15

*McBean v. City of N.Y.*,
    228 F.R.D. 487 (S.D.N.Y. 2005) ................................................................................15, 16

# TABLE OF AUTHORITIES
## (CONTINUED)

**CASES**                                                                                                    **PAGE(S)**

*McBean v. City of N.Y.,*
   233 F.R.D. 377 (S.D.N.Y. 2006) ........................................................................................8

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
   169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................10, 13

*In re Nassau Cty. Strip Search Cases v. Jablonsky,*
   461 F.3d 219 (2d Cir. 2006).......................................................................................14, 16

*Roberts v. Texaco, Inc.,*
   979 F.Supp. 185 (S.D.N.Y. 1997) .....................................................................................9

*Robidoux v. Celani,*
   987 F.2d 931 (2d Cir. 1993).............................................................................................11

*Ross v. A.H. Robins Co., Inc.,*
   100 F.R.D. 5 (S.D.N.Y. 1982) .........................................................................................13

*Steinberg v. Nationwide Mut. Ins. Co.,*
   224 F.R.D. 67 (E.D.N.Y. 2004) .......................................................................................12

*Stinson v. City of N.Y.,*
   282 F.R.D. 360 (S.D.N.Y. 2012) ...............................................................................12, 14

*Sykes v. Mel S. Harris and Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015)........................................................................................14, 16

*In re U.S. Foodservice Inc. Pricing Litig.,*
   729 F.3d 108 (2d Cir. 2013).............................................................................................14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005).........................................................................................11, 17

*Wright v. Stern,*
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ...............................................................................9


**RULES**

Federal Rule of Civil Procedure 23(a)(3) ............................................................................12

Federal Rule of Civil Procedure 23(b)(3) .......................................................................14, 15

Federal Rule of Civil Procedure 23(e)(1) ...........................................................................17

**OTHER AUTHORITIES**                                                                                 **PAGE(S)**

Margaret Garnett & Dana A. Roth, *Visitor Searches at the New York City Department of Correction: Ongoing Problems and Recommendations for Change,* N.Y. City Dep't of Investigation (2019), https://www1.nyc.gov/assets/doi/reports/pdf/2019/May/DOC_VisitiorSearch_Report_Appendix_FINAL.pdf ...................................................................................3

*Rikers Visitors Stripped of their Dignity,* The Brian Lehrer Show, WNYC (Jan. 13, 2017), http://www.wnyc.org/story/stripped-their-dignity-rikers/ ......................................3

*The Risks Women Face Just For Visiting Rikers*, The Leonard Lopate Show, WNYC (Jan. 17, 2017), http://www.wnyc.org/story/risks-women-face-visiting-rikers ........................................................................................................................3

Sarah Wallace, *Women Say Rikers Island Visitors Subjected to Invasive Searches* (Jan. 11, 2017), http://www.nbcnewyork.com/news/local/Rikers-Island-Women-Strip-Searched-Complaints-410305665.html ...........................................................3

Named Plaintiffs Dana Grottano ("Grottano"), N.D., and D.M. ("Named Plaintiffs"), on behalf of themselves and all others similarly situated (together, "Plaintiffs"), respectfully submit this memorandum of law and the accompanying Declarations of Bruce E. Menken ("Menken Declaration" or "Menken Decl."), Oren Giskan ("Giskan Declaration"), and Raymond Audain ("Audain Declaration") in support of their motion for preliminary approval of a proposed settlement of this action pursuant to Federal Rule of Civil Procedure 23(b)(3) (the "Settlement"), as against Defendants the City of New York ("City"), former Department of Correction ("DOC") Commissioner Joseph Ponte, Correction Officer ("CO") Yolanda Capers ("Defendant Capers"), and CO Thomasena Graham ("Defendant Graham") (together, "Defendants") (all together, the "Parties").

## INTRODUCTION

Plaintiffs allege that members of the DOC unlawfully invasively search[1] visitors to inmates in City jails. Now, after nearly four years of litigation, the Parties have entered into a settlement agreement that will provide class members substantial monetary and injunctive relief. The proposed settlement provides that Defendants will pay up to $12.5 million in damages to class members *exclusive of* administrative costs, incentive awards, and attorneys' fees and costs. Each claimant is eligible to receive approximately $4,000 in damages, subject to the exceptions and limitations discussed in greater detail below. Moreover, Defendants have agreed to injunctive relief designed to bring an end to these improper visitor invasive searches, including substantial revisions to the DOC's Inmate Visitors Procedures policy, Directive 2007R-D ("Search

---

[1] An invasive search is any search of a visitor conducted by DOC employees or by a visitor at the direction of a DOC employee at a DOC facility that resulted in more than accidental or incidental exposure of, or contact with, a visitor's breasts, genitals, or buttocks as part of the search process.

Directive"); changes to how COs are trained to search visitors; and changes to the signage and forms that apprise visitors of their rights when being searched. Finally, the Parties have agreed that Class Counsel will have two years of post-settlement oversight from the date of the final approval.

This Settlement culminates nearly four years of hard-fought litigation, including months of arm's length settlement negotiations under the supervision of The Honorable James C. Francis IV (Ret.). The Parties now seek an order:

1. preliminarily approving the Settlement;

2. conditionally certifying the class for settlement purposes;

3. appointing Plaintiffs Grottano, N.D. and D.M. as class representatives;

4. appointing the NAACP Legal Defense and Educational Fund, Inc.; Beranbaum Menken LLP; and Giskan, Solotaroff & Anderson LLP as Class Counsel;

5. approving the form and content of the proposed claim form and notice describing the terms of the Settlement and the proposed plan for disseminating the notice, and directing that the notice be provided to class members in accordance with the notice plan;

6. approving the claims administrator; and,

7. setting a date for a hearing to consider final approval of the Settlement.

Attached to the Menken Declaration are (i) the proposed settlement agreement (Exhibit 3); (ii) the proposed notice and claim forms (Exhibits 4, 5, and 6); and (iii) the proposed order of preliminary approval (Exhibit 8).

## FACTUAL BACKGROUND

Hundreds of visitors to City jails have complained about being invasively searched. *See* Menken Decl. ¶ 13. The City's Department of Investigation has acknowledged the credibility of

these complaints and confirmed the problem's pervasiveness.[2]  Press reports have also confirmed

the problem's pervasiveness.[3]  In Plaintiff Grottano's case, she was invasively searched by

Defendant Capers on September 1, 2015, during a visit to Rikers Island; Defendant Capers

invasively searched Plaintiff Grottano in front of her five-year old daughter and explained that

"this is proper procedure."  *See* Third Amended Class Action Complaint, ECF No. 63 at ¶¶ 3, 53-

66.  Plaintiff N.D. was invasively searched by an unidentified CO at Rikers Island in October 2014.

*See id.* at ¶¶ 4, 73-74.  Plaintiff D.M. was invasively searched by Defendant Graham at the

Brooklyn House of Detention in December 2015.  *See id.* at ¶¶ 4, 103-114.  Discovery

demonstrates that many class members were invasively searched during pat-frisk searches.[4]  *See*

---

[2] *See* Margaret Garnett & Dana A. Roth, *Visitor Searches at the New York City Department of Correction: Ongoing Problems and Recommendations for Change,* N.Y. City Dep't of Investigation (2019), https://www1.nyc.gov/assets/doi/reports/pdf/2019/May/DOC_VisitiorSearch_Report_Appendix_FINAL.pdf

[3] *See The Risks Women Face Just For Visiting Rikers*, The Leonard Lopate Show, WNYC (Jan. 17, 2017), http://www.wnyc.org/story/risks-women-face-visiting-rikers; *Rikers Visitors Stripped of their Dignity,* The Brian Lehrer Show, WNYC (Jan. 13, 2017), http://www.wnyc.org/story/stripped-their-dignity-rikers/; Raven Rakia, *A Living Nightmare* (Jan. 10, 2017), https://theintercept.com/2017/01/10/rikers-island-strip-search-new-york-city-jails-visitors/; Cindy Rodriguez, *Stripped of Their Dignity,* (Jan. 10, 2017), https://www.wnyc.org/story/stripped-their-dignity/; Sarah Wallace, *Women Say Rikers Island Visitors Subjected to Invasive Searches* (Jan. 11, 2017), http://www.nbcnewyork.com/news/local/Rikers-Island-Women-Strip-Searched-Complaints-410305665.html.

[4] DOC's search directive describes the proper way to conduct a visitor pat-frisk search.  Section IV(B)(2) of the visitor search directive states that each visitor shall be subject to an electronic search involving a walk-through metal detector.  Section IV(C) establishes that, if a visitor has been checked with a metal detector and staff reasonably believe that further inspection is necessary to preclude the introduction of contraband (*i.e.*, the triggering of the metal detector, a suspicious bulge in the visitor's clothing, confidential information, or the visitor's documented history of attempting to bring in contraband), the staff member shall immediately notify the area supervisor, who shall evaluate the situation to determine if further inspection for contraband is warranted.  If the area supervisor determines that further inspection is warranted, he/she shall notify the commanding officer (or her designee) and, if given approval by the commanding officer, shall give the visitor a Search Consent Report form explaining the reason for a pat-frisk and the pat-frisk

Menken Decl. at ¶ 13.  DOC conducts approximately 3000 pat-frisk searches every month.  *See id.*

## PROCEDURAL BACKGROUND

On November 23, 2015, Plaintiffs filed this class action pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1 § 12 of the New York State Constitution.[5]  ECF No. 1.  On April 13, 2016, Plaintiffs filed their Third Amended Class Action Complaint.  ECF No. 63.  Plaintiffs alleged that the City has been deliberately indifferent to the DOC's pattern and practice of unlawfully invasively searching visitors to inmates in DOC facilities.  *See id.* at ¶¶ 119-120, 124.  Plaintiffs also alleged that, as a result of the City's alleged deliberate indifference, they were unconstitutionally invasively searched at DOC facilities over a fourteen-month period.  *See id.*  Plaintiffs seek monetary and injunctive relief for everyone who, since November 23, 2012, was invasively searched while visiting a City jail.  *See* Menken Decl. at ¶ 10.  Settlement discussions began in July 2018. *See id.* at ¶ 21.  In January 2019, the Parties retained Judge Francis to mediate this case. *See id.* at ¶ 22. With Judge Francis's extensive assistance, the Parties have been able to work through a number of challenging issues to resolve this complex matter without further litigation. *See id.* at ¶¶ 23-25.

## PROPOSED SETTLEMENT

### I.   Class Definition

---

process.  The search directive establishes that the pat-frisk search should be conducted by patting the outer clothing of the entire length of the visitor's body.  The search directive makes clear that the visitor's "skin shall be touched only at the shirt-sleeves and collar."  The search directive also requires that, in conducting a search, "officers shall strive to preserve the dignity of the visitor being searched."  *See* Menken Decl. Exhibit 7.

[5] Plaintiffs filed amended complaints on December 17, 2015, ECF No. 6, and February 25, 2016, ECF No. 40.

The Parties have agreed to the following class definition:

*Any person who visited or attempted to visit an inmate housed at a New York City Department of Correction facility from November 23, 2012, to [THE DATE OF THE PRELIMINARY APPROVAL BY THE COURT], who was subject to an invasive search.*

*Persons are excluded from the class if they were arrested for possession of contraband in the course of a visit, **unless** they were subject to an invasive search on a separate occasion and were not arrested.*

## II.    Definitions

*Invasive Search:*

*Any search of a visitor conducted by a DOC employee or by a visitor at the direction of a DOC employee at a DOC facility that resulted in more than accidental or incidental exposure of, or contact with, a visitor's breasts, genitals, or buttocks as part of the search process.*

*An invasive search also includes any search of a visitor conducted by a DOC employee or by a visitor at the direction of a DOC employee at a DOC facility when the visitor is made to expose, remove, or display any feminine hygiene products they are wearing, including but not limited to: sanitary napkins, tampons, and other absorbent materials placed in the vicinity of a visitor's vagina or underwear.*

*Not an Invasive Search:*

*Unless it resulted in more than the accidental or incidental exposure of, or contact with, a visitor's breasts, genitals, or buttocks, the patting of the visitor's clothing; examining of the visitor's seams and pockets; touching the visitor's skin at the shirt-sleeves and collar; and requiring that the visitor lift, raise, or adjust their clothing for a visual inspection, is not by itself an invasive search.*

*A search of religious headwear and religious necklaces is not by itself an invasive search.*

## III.    Proposed Settlement Terms

The complete terms of the Settlement are set forth in the proposed settlement agreement that is annexed as Exhibit 3 to the Menken Declaration ("Sett. Agr.").

### A.    Monetary Relief

For each eligible class member who submits a claim, Defendants have agreed to provide compensation in the amount of approximately $4,000.00, subject to the following exceptions: class members who were subjected to an invasive search during the Class Period (November 23, 2012 to the date of preliminary approval) ("Class Period") will receive $500 if they were (a) found with contraband more than once, and were denied a visit or had their visit(s) restricted; or (b) were found with contraband on their only visit, and were denied or had their visit restricted. These individuals will be referred to as "Contraband Claimants." For each Contraband Claimant, an additional $500 will be set aside and apportioned among the non-Contraband Claimants, on a pro-rata basis. *See* Sett. Agr. at ¶¶ 54-60.

The City will pay class members up to a total of $12,500,000. If the total number of claims falls short of that amount, the City will retain the residual funds. If the claims exceed $12,500,000, each claimant's individual award will be reduced on a pro rata basis. Defendants will also pay the costs of settlement administration (including notice costs) up to $500,000 and, subject to Court approval, incentive awards to the Named Plaintiffs totaling $70,000. *See id.*

**B.** **Injunctive Relief**

DOC has also agreed to substantial injunctive relief to prevent unlawful and improper visitor searches from occurring in DOC facilities. DOC will begin to implement the injunctive relief upon preliminary approval of this Settlement. The key elements of the injunctive relief settlement are:

1. Revisions to DOC Policies. DOC will revise its policies to clarify that invasive searches of inmate visitors are prohibited in all circumstances. Specifically, DOC will revise the Search Directive to explicitly inform COs about what search methods are permissible and impermissible, and to eliminate conflicting or

confusing instructions.  This revised Search Directive is incorporated by reference into the proposed settlement agreement.  DOC has approved the agreed upon revisions to the revised Search Directive.  DOC will publish it no later than 30 days after the relevant DOC staff are trained on the revised Search Directive.

2.  <u>Revisions to Training.</u>  DOC will revise its training practices to ensure that all personnel who participate in the visitor search process learn how to properly search visitors in accordance with the revised Search Directive.  DOC will also revise its training practices to ensure that all personnel who participate in the visitor search process learn that invasively searching visitors is absolutely prohibited.  The new training curriculum will include a quiz for DOC staff, a revised instructor's guide, and a new training workbook.  These materials are incorporated by reference into the proposed settlement agreement.

3.  <u>Revised Forms</u>.  DOC will revise the Visitor Pat Frisk Consent Form to include language consistent with the revised Search Directive to clearly state the ways that DOC personnel may and may not search an inmate visitor.  The revised Visitor Pat Frisk Consent Form is incorporated by reference into the proposed settlement agreement.

4.  <u>Improved Signage Apprising Visitors of Their Rights.</u>  DOC will revise the Visitor Pat Frisk Poster to state explicitly how DOC personnel may and may not search an inmate visitor.  The revised Visitor Pat Frisk Poster is incorporated by reference into the proposed settlement agreement.

5.  <u>Post-Settlement Oversight.</u>  DOC will also submit to post-settlement oversight, subject to the specific terms and reporting deadlines agreed to in the proposed

settlement agreement. During the oversight period, DOC will afford Plaintiffs access to visitor invasive search complaints, video footage related to visitor complaints, and information about DOC's investigations into visitor complaints.

*See* Sett. Agr. at ¶¶ 34-48, 52.

### C.     Plaintiffs' Service Awards and Class Counsels' Fees

Plaintiffs will file separate motions asking the Court to approve service awards when Plaintiffs move for final approval of the Settlement.    Defendants have agreed to pay service awards in the amount of $30,000 for Plaintiff Grottano, $20,000 for Plaintiff N.D., and $20,000 for Plaintiff D.M., in recognition of their assistance as putative class representatives.[6]  *See* Sett. Agr. at ¶ 55. We believe that the Named Plaintiffs endured horrific experiences while visiting a loved one at a City jail and risked retaliation by COs at subsequent visits to DOC facilities.  *See* Menken Decl. at ¶ 18.   Nevertheless, each Named Plaintiff discharged their duties as class representatives effectively and admirably and devoted a considerable amount of time to this case.  *See id*.  Each Named Plaintiff repeatedly told their stories to Plaintiffs' counsel and, eventually, on the record in their respective depositions.  *See id.* at ¶ 19.   Each Named Plaintiff also met with counsel many times—to gather facts to allege in the Complaint, to respond to discovery requests, and to prepare and sit for their depositions.  *See id.*  They also played a critical role during the Parties' lengthy negotiations.  Each Named Plaintiff attended a portion of one of the mediation sessions with Judge Francis and helped to develop effective injunctive relief.  *See id.* at ¶ 20.   These proposed incentive awards are comparable to what courts in this District have deemed appropriate for class representatives who were not claiming physical injuries.  *See, e.g., McBean v. City of N.Y.,* 233

---

[6] The Parties are requesting the additional $10,000 for Plaintiff Grottano because she did not proceed anonymously.

F.R.D. 377, 391 (S.D.N.Y. 2006) (describing service awards ranging from $25,000 to $35,000 as "solidly in the middle of the range"); Order Approving the Jan. 26, 2012 Stipulation of Settlement at 5, *Casale v. Kelly,* No. 1:08-cv-02173-SAS (S.D.N.Y. Dec. 21, 2012), ECF No. 113 (awarding $25,000 to eight named plaintiffs); *see also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 204 (S.D.N.Y. 1997) (awarding, over 20 years ago, an $85,000 and $50,000 incentive award to two class representatives); *Wright v. Stern*, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (awarding, over 10 years ago, $50,000 to each of the 11 class representatives in race discrimination class action).

Class Counsel will also file a separate motion for reasonable attorneys' fees and expenses no later than 45 days before the final approval hearing. Class Counsel intends to seek up to $5.4 million, to be paid by the City. *See* Menken Decl. at ¶ 30; *see also* Sett. Agr. at ¶ 53.

### D. Notice

Within 30 days after entry of the preliminary approval order, the proposed notice and claim forms will be mailed to everyone who visited a DOC facility within the Class Period. *See* Sett. Agr. at ¶¶ 67, 68, 70, 75. The proposed notice and claim forms are attached as Exhibits 4, 5, and 6 to the Menken Declaration. In addition, the Parties will provide publication notice to class members in the NY Daily News, the NY Post, El Diario, the Caribbean News, AM New York, and the New York Amsterdam News. *See* Menken Decl. at ¶ 28. The Parties will also provide notice on Facebook and Instagram; on YouTube and/or local TV stations such as NY1 and Fox 5; on subways and buses; and in visitor areas at DOC facilities. *See id.* The claims administrator, appointed by this Court, will also maintain a website for any prospective class member to visit. *See id.* at ¶ 29. Any individual eligible for damages may submit a claim form, regardless of whether he or she received a notice and claim form from the claims administrator. *See* Sett. Agr. at ¶ 57.

**E.     Proposed Settlement Approval Schedule**

The Parties propose the following settlement schedule:

| | |
|---|---|
| Notice given to the class: | 30 days after preliminary approval |
| Deadline to Object/Opt out: | 75 days after preliminary approval |
| Final Approval Hearing: | 90 days after preliminary approval |
| Deadline to Submit Claims: | 180 days after preliminary approval |

*See* Sett. Agr. at ¶ 67.

## STANDARD

Preliminary approval requires that the Settlement is fair, within the reasonable range of possible approval, and adequate. *See Ayers v. SGS Control Servs.*, No. 03 Civ. 9078, 2008 U.S. Dist. LEXIS 69307 (S.D.N.Y. Sep. 8, 2008) (Berman, J.) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *Ayzelman v. Statewide Credit Servs. Corp.*, 238 F.R.D. 358, 364 (E.D.N.Y. 2006) (citing *Joel A. v. Guiliani,* 218 F.3d 132, 138 (2d Cir. 2000)). A court should grant conditional certification of a class for settlement purposes where, as here, the proposed class and class representatives satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and one of the three subsections of Rule 23(b). *See generally Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 619-29 (1997). "[T]he Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 504 (S.D.N.Y. 1996) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1208-09 (2d Cir. 1972) and *Green v. Wolf Corp.*, 406 F.2d 291, 298, 301 (2d Cir. 1968)). Each Rule 23(a) and (b)(3) requirement has been met in this action as explained below.

**ARGUMENT**

The proposed settlement satisfies the requirements for preliminary approval and is procedurally and substantively fair. For more than six months, the Parties engaged in vigorous, substantive, detailed, and arm's length negotiations overseen by experienced, capable attorneys and a former magistrate judge with 32 years of experience on the federal bench. The Parties worked closely with Judge Francis to overcome key points of contention and broke several logjams that occurred during the negotiations. In the end, Plaintiffs achieved a remarkable result for the class: substantial monetary damages for class members and robust injunctive relief.

I.     **The Requirements of Rule 23(a) Are Satisfied**

A.     **The Class is Sufficiently Numerous.**

Numerosity is presumed at a level of 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Parties believe that the class numbers in the thousands. Therefore, the numerosity requirement is satisfied. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); *Floyd v. City of N.Y.,* 283 F.R.D. 153, 161 (S.D.N.Y. 2012) (courts do not require evidence of exact class size); *Daniels v. City of N.Y.*, 198 F.R.D. 409, 416-17 (S.D.N.Y. 2001) (finding numerosity based on reasonable assumption about total stops); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 96-97 (E.D.N.Y. 2013) (crediting for numerosity purposes 100 complaints alleging injury).

B.     **Questions of Law or Fact Are Common to The Class.**

The commonality element of Rule 23(a)(2) requires Plaintiffs "to demonstrate that the class members have suffered the same injury, and the claims must depend upon a common contention .

. . of such a nature that it is capable of classwide resolution[.]" *Floyd,* 283 F.R.D. at 161 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation marks omitted)).  It is considered a "minimal burden for a party to shoulder." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *see also DeMarco v. Nat'l Collector's Mint, Inc*., 229 F.R.D. 73, 80 (S.D.N.Y. 2005) (Rule 23(a)(2) is met where plaintiffs and the proposed class share a single common question of law or fact.).

Here, the claims of the Named Plaintiffs and the putative class members arise from a common course of conduct and involve several core common questions of law or fact, including:

(a) whether the City deprived class members of their state and federal constitutional rights when class members were subjected to invasive searches by DOC personnel;

(b) whether a widespread pattern or practice of invasively searching DOC visitors existed, and, if so, whether the City was on notice of this pattern or practice;

(c) whether, for purposes of municipal liability, the City exhibited deliberate indifference to constitutional deprivations caused by DOC personnel; and

(d) whether the City failed to adequately train, supervise, and discipline DOC personnel regarding invasive searches.

Therefore, the commonality requirement is readily satisfied. *See Stinson v. City of N.Y.,* 282 F.R.D. 360, 369 (S.D.N.Y. 2012) (finding commonality where plaintiffs "alleged that they were victims of a pattern and practice set and enforced by city officials[.]") (citing *Daniels,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("The fact that the claims of the proposed class stem from the same alleged unconstitutional conduct of the defendants proves the existence of common questions of law or fact.")).

### C.     Plaintiffs' Claims Are Typical.

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010); *see also Floyd,* 283 F.R.D. at 161 ("[T]he typicality requirement may be satisfied where injuries derive from a unitary course of conduct by a single system.") (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (quotation marks omitted)). "The purpose of typicality is to ensure that class representatives have the same incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Floyd*, 283 F.R.D. at 175 (quoting *NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 510 (S.D.N.Y. 1996) (quotation marks omitted)). Named Plaintiffs allege that, because of the City's alleged deliberate indifference, they were subjected to the same invasive searches as other members of the class. As such, their claims are typical.

## D. Named Plaintiffs Will Fairly and Adequately Protect the Class's Interests.

The adequacy requirement of Rule 23(a)(4) is satisfied where (a) the plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation; and (b) the named plaintiffs' interests are not antagonistic to the other class members' interests. *In re Joint E. & S. Distr. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996); *see also Ross v. A.H. Robins Co., Inc.*, 100 F.R.D. 5, 7 (S.D.N.Y. 1982). Both prongs of Rule 23(a)(4) are satisfied here.

First, Class Counsel are experienced class action attorneys that have litigated complex civil rights class actions in the past. *See* Menken Declaration; Giskan Declaration; Audain Declaration. Most notably, the class is also represented by the NAACP Legal Defense and Educational Fund,

Inc., an organization known for its experience in civil rights litigation, including complex, federal class actions. Second, Named Plaintiffs' interests are aligned with the interests of the class members, as Named Plaintiffs seek damages for similarly situated visitors to DOC facilities who have been subjected to an unlawfully invasive search because of the City's alleged deliberate indifference.

## II. The Requirements of Fed. R. Civ. P. 23(b)(3) Are Satisfied

Rule 23(b)(3) provides that a class action may be maintained if "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Nassau Cty. Strip Search Cases v. Jablonsky*, 461 F.3d 219, 225 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3) adv. comm. n. to 1966 amend.) (quotation marks omitted).

### A. Common Questions of Law or Fact Predominate as to Plaintiffs' Claims.

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof'." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citations omitted), *cert. denied*, 134 S. Ct. 1938 (2014). "Although predominance is a more stringent inquiry, 'satisfaction of the typicality requirement of Rule 23(a) . . . goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality.'" *Stinson*, 282 F.R.D. at 382 (quoting *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986)). Rule 23(b)(3) does

not require Plaintiffs to prove that each element of their claim is susceptible to class-wide proof.

*Sykes v. Mel S. Harris and Assocs. LLC,* 780 F.3d 70, 81 (2d Cir. 2015). Rather,

> all that is required is that a class plaintiff show that common questions predominate. That is, individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Id.* (internal quotation marks, brackets, and citations omitted). "[C]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 81 "That is, the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Id.* at 82 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)) (quotation marks omitted).

The class is unified by a common legal theory—specifically, the City's alleged deliberate indifference to the pattern and practice of invasively searching visitors was unconstitutional. The class is also unified by the common fact that every class member was invasively searched because of the City's alleged deliberate indifference. Courts have found Rule 23(b)(3) predominance in similar cases. *See, e.g., McBean v. City of N.Y.,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005) (inmate strip-search case where court found common questions predominated because the constitutionality of the DOC's policy to which the plaintiffs fell victim unified the plaintiffs); *see also Brown v. Kelly,* 609 F.3d 467, 483 (2d Cir. 2010) (common questions included whether City failed to train its personnel and whether the police commissioner had knowledge of unlawful acts); *Butler v. Suffolk Cty.*, 289 F.R.D. 80, 102 (E.D.N.Y. 2013) (questions about defendants' deliberate indifference to jail conditions predominated over individual issues).

**B.    A Class Action is the Superior and Most Efficient Method for Adjudicating This Action.**

A class action is also the superior and most efficient method for adjudicating this case. The list of factors that courts should consider when analyzing superiority include the interests of the class members in maintaining separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. *Nassau Cty. Strip Search Cases*, 461 F.3d at 230; *see also Sykes*, 780 F.3d at 82.

Here, class certification would permit the resolution of individual claims in a single forum, thereby avoiding multiple lawsuits, promoting judicial economy, and averting inconsistent results. *See, e.g., A.T. v. Harder*, 298 F. Supp. 3d 391, 406 (N.D.N.Y. 2018) (judicial economy served in juvenile solitary confinement class action by avoiding multiple individual suits that raise the same issues and seek the same relief). Moreover, absent class certification, many class members may fail to pursue their claims at all, as many may not possess the knowledge or resources necessary to file individualized lawsuits, or even realize that their searches were illegal. In *McBean*, the court found that a class action was most efficient and superior for similar reasons. 228 F.R.D. at 503. It concluded that the socioeconomic status of the proposed class members likely precluded a significant portion of them from bringing individual claims. *Id.* As such, class action treatment was favorable to protect the rights of class members who, due to lack of resources, might be unable to litigate their individual claims. *Id.* (citing *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996)). The same is true here.

**III.    The Court Should Approve the Proposed Notice and the Procedure for Notifying the Settlement Class Members**

Notice of a pending class action settlement may be directed "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113-14 (2d Cir. 2005) (standard for the adequacy of a class action settlement notice is one of "reasonableness") (citing *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983)). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (internal quotation marks and brackets omitted)). This standard is easily met here.

The Settlement provides for notice by direct mail to all individuals who visited DOC facilities during the Class Period.  In addition, the Parties will provide publication to class members as set forth above. The claims administrator will also maintain a website for any prospective class members to visit.  Any individual eligible for damages may submit a claim form, regardless of whether he or she received the notice and claim form from the claims administrator.  Any individual sent postal notice that is returned undeliverable will be sent the notice at their last known mailing address, as determined by the National Change of Address database available from the U.S. Postal Service. The notice "clearly and concisely state[s] in plain, easily understood language" all information required by Rule 23(c)(2)(B). The notice advises individuals of the terms of the Settlement, the procedure for objecting to the Settlement and opting out of the class, and where to get additional information.  The notice also sets forth the time, date, and place of the final approval hearing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order: (1) conditionally certifying a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) for the purpose of effectuating the proposed class action settlement with Defendants; (2) preliminarily approving the Settlement; (3) directing notice to class members regarding the Settlement; and (4) scheduling a final approval hearing.

Dated: October 21, 2019          Respectfully submitted,

/s/ *Raymond Audain*
Raymond Audain
NAACP LEGAL DEFENSE &
   EDUCATIONAL FUND, INC.
40 Rector Street, 5th Fl.
New York, NY 10006
(212) 965-2200
raudain@naacpldf.org

Bruce E. Menken
Scott Simpson
Beranbaum Menken LLP
80 Pine Street, 33rd Floor
New York, NY 10005
(212) 509-8088

Oren Giskan
Giskan Solotaroff & Anderson LLP
90 Broad Street 10th Floor
New York, NY 10004
(212) 847-8315

*Counsel for Plaintiffs*