# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANA GROTTANO; N.D.; A.R.; and D.M., *individually and on behalf of all others similarly situated,*

                        *Plaintiffs,*

        -against-

THE CITY OF NEW YORK; THE CITY OF NEW YORK DEPARTMENT OF CORRECTION COMMISSIONER JOSEPH PONTE; CORRECTION OFFICER YOLANDA CAPERS; CAPTAIN ERICA MAYWEATHER; CORRECTION OFFICER THOMASENA GRAHAM; and JOHN AND JANE DOE CORRECTION OFFICERS 1-25,

                        *Defendants.*

Case No. 15 Civ. 9242 (RMB)(KNF)

---

## STIPULATION OF SETTLEMENT AND ORDER

**THIS CLASS ACTION LAWSUIT SETTLEMENT AGREEMENT** is made and entered into as of the 20th day of June 2019, by and among Defendants City of New York, the City of New York Department of Correction Commissioner Joseph Ponte, Correction Officer Yolanda Capers, and Correction Officer Thomasina Graham (collectively, "Defendants"); and Named Plaintiffs Dana Grottano, D.M., and N.D. ("Class Representatives" or "Named Plaintiffs"),[1] on behalf of themselves and the plaintiff class of which they are Class Representatives (collectively, the "Plaintiffs") (altogether, the "Parties").

---

[1] A.R. voluntarily dismissed her claims in this Civil Action by stipulation on March 19, 2018. The stipulation further dismissed all claims against Captain Erica Mayweather.

**WHEREAS,** on November 23, 2015, the Named Plaintiffs filed a Complaint pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution, and the New York State Constitution, Article I, § 12; and

**WHEREAS**, the Named Plaintiffs filed a First Amended Complaint on December 17, 2015; a Second Amended Complaint on February 24, 2016; and a Third Amended Complaint on April 13, 2016, all of which also alleged that the New York City Department of Correction ("DOC") invasively searched visitors to inmates at DOC facilities, and that the City of New York was deliberately indifferent to the DOC's pattern and practice of invasively searching visitors to DOC facilities; and

**WHEREAS,** Defendants have denied any and all liability arising out of Plaintiffs' allegations; and

**WHEREAS,** the Parties now desire to resolve the issues raised in this litigation without further proceedings and without admitting any fault or liability; and

**WHEREAS,** the terms of this Stipulation of Settlement and Order ("Stipulation") were extensively and vigorously negotiated in good faith over several months under the close supervision of The Honorable James C. Francis IV (Ret.); and

**WHEREAS,** the negotiations have resulted in this Stipulation, which, subject to the approval of the Court, settles this Civil Action in the manner and upon the terms set forth below; and

**WHEREAS**, the signatories hereby represent that they are fully authorized to enter into this Stipulation and to bind the Parties and the Class Members to the terms and conditions hereof, subject to Court approval.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and between the undersigned, as follows:

**INTRODUCTION**

1.      The terms of this Stipulation provide a substantial benefit to the Settlement Class, as defined below.  The Parties consider this Stipulation to be fair, reasonable, and adequate.

2.      Defendants deny any and all liability and deny that they had or have a policy, or engaged in or currently engage in a pattern or practice that deprived persons of rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the State of New York.

3.      This Stipulation does not, and shall not be deemed to, constitute an admission by Defendants as to the validity or accuracy of any of the allegations, assertions, or claims made by Plaintiffs.  This Stipulation does not constitute an admission, adjudication, or finding on the merits of this Civil Action.

## DEFINITIONS

The terms described below shall have the meanings defined in this Section wherever used in this Stipulation, and for the purposes of this Stipulation only.

4. "Administrative Costs" are the expenses incurred by the Claims Administrator in connection with the implementation and administration of, and dissemination of notice, and processing of claims pursuant to this Stipulation and the Proposed Preliminary Approval Order.

5. "Bar Date" is the date established by the Court by which any presumptive Class Member who wishes to receive payment pursuant to this Stipulation must submit a Claim Form. The Parties agree that this date should be 180 days from the Date of Class Notice.

6. "City" means the City of New York.

7. "Civil Action" means the litigation captioned *Grottano, et al. v. City of New York, et al.*, Case No. 15 Civ. 9242, before The Honorable Richard M. Berman in the United States District Court for the Southern District of New York.

8. "Claims Administrator" means the Claims Administrator appointed by the Court. The Claims Administrator's duties are defined below, in Paragraphs 68 through 83.

9. "Claim Form" means the form agreed to by the Parties that Class Members must complete and submit in order to receive payment from this settlement.

10.     "Class Counsel" means the NAACP Legal Defense and Educational Fund, Inc., Giskan Solotaroff & Anderson LLP, and Beranbaum Menken LLP.

11.     "Class Fund" means the amount to be paid by the City in satisfaction of all claims of Class Members. That amount shall be up to $12,500,000.00 (Twelve Million Five Hundred Thousand Dollars).

12.     "Class Member" means any member of the Settlement Class.

13.     "Class Period" means the period commencing on November 23, 2012, and ending on the date of entry of the Preliminary Approval Order.

14.     "Class Representatives" or "Plaintiffs" or "Named Plaintiffs" means DANA GROTTANO, N.D., and D.M.

15.     "Contraband Claimants" are defined as those who were subject to an invasive search during the Class Period and:

(i)     were found with contraband more than once, and were denied a visit or had their visit(s) restricted; or

(ii)    were found with contraband on their only visit, and were denied a visit or had their visit restricted.

16.     "Counsel for Defendants" means the New York City Law Department, Office of the Corporation Counsel.

17.     "Court" means the United States District Court for the Southern District of New York.

18.     "Defendants" means the City of New York, DOC Commissioner Joseph Ponte; Correction Officer Yolanda Capers; and Correction Officer Thomasina Graham.

19.     "DOC" means the New York City Department of Correction.

20.     "Effective Date for Payment" is the date when the City's obligation to deposit the Class Fund of $12,500,000.00 (Twelve Million Five Hundred Thousand Dollars) becomes effective. It is five (5) business days following entry of the Final Approval Order.

21.     "Final Approval Order" means an Order by the Court, after a fairness hearing, granting Final Approval to this Settlement Stipulation, approving Class Counsel's fees and costs, approving the Administrative costs, approving Service Award Payments, and dismissing the Civil Action with prejudice.

22.     "Final Approval Date" means the date of entry by the Court of the Final Approval Order.

23.     "Invasive Search" means any search of a visitor conducted by any DOC employee or by a visitor at the direction of any DOC employee, at a DOC facility that resulted in more than accidental or incidental exposure of, or contact with, a visitor's breasts, genitals, or buttocks as part of the search process. An Invasive Search also includes any search of a visitor conducted by any DOC employee, or by a visitor at the direction of any DOC employee, at a DOC facility when the visitor is made to expose, remove, or display any feminine

hygiene products they are wearing, including but not limited to: sanitary napkins, tampons, and other absorbent materials placed in the vicinity of a visitor's vagina or underwear. Unless it resulted in more than the accidental or incidental exposure of, or contact with, a visitor's breasts, genitals, or buttocks, the patting of the visitor's clothing, examining of the visitor's seams and pockets, touching the visitor's skin at the shirt-sleeves and collar, and requiring that the visitor lift, raise, or adjust their clothing for visual inspection, is not by itself an Invasive Search. A search of religious headwear and religious necklaces is not by itself an Invasive Search.

24. "Opt-Out" is any potential Class Member who files a timely written request to be excluded from the Class.

25. "Parties" means Plaintiffs and Defendants.

26. "Preliminary Approval Date" means the date of entry of the Preliminary Approval Order.

27. "Preliminary Approval Order" means the Order entered by the Court preliminarily approving this Stipulation, scheduling a fairness hearing, approving a plan of notice to the Class, appointing the Class Administrator, and class administration.

28. "Released Claims" means any and all past or present claims or causes of action (including any suits, petitions, demands or other claims in law, equity or arbitration), and any and all allegations of liability or damages, of whatever kind, nature or description, direct or indirect, in law, equity or arbitration, absolute or contingent, whether class or individual in nature, including

both known claims and unknown claims, asserted or unasserted, for monetary and non-monetary relief (including without limitation attorneys' fees, costs or disbursements incurred by the Class Representatives and/or the Class or any Class Member in connection with or related to the Civil Action), alleging an Invasive Search that were or could have been asserted by the Class Representatives and/or any Class Member against the Defendants and any of their parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privies and insurers (collectively defined as the "Released Parties"), including any and all claims asserted in the original and subsequently amended complaints filed in the Civil Action. This Release does not include or cover any actions or omissions occurring after the Preliminary Approval Date, nor does it include or cover any claims stemming from any certified class action, other than this Civil Action, in which a Class Representative or Class Member in this Civil Action already is a member of the class.

29. "Released Parties" means any and all Defendants, namely the City of New York, DOC Commissioner Joseph Ponte; Correction Officer Yolanda Capers; and Correction Officer Thomasina Graham, and any of their parents, subsidiaries, affiliates, predecessors, successors and/or assigns and in the case of all such entities, their respective past and present representatives, officers, directors, attorneys, agents, employees, privies and insurers.

30. "Settlement Class" is defined as the Class previously agreed to by the Parties in the Civil Action, comprising the Class Representatives

and all other individuals who visited or attempted to visit an inmate housed at a DOC facility between November 23, 2012 and the date of preliminary approval ("Class Period"), and who were subject to an Invasive Search as defined above in Paragraph 23.

## CLASS CERTIFICATION

31.     The Parties agree to the certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure and Plaintiffs will seek such certification at the fairness hearing on this settlement.

## SETTLEMENT CLASS DEFINITION

32.     The "Settlement Class" is defined as:

*All persons who visited or attempted to visit an inmate housed at a New York City Department of Correction facility from November 23, 2012 to the date of preliminary approval and were subject to an Invasive Search.*[2]

33.     Excluded from the Class are visitors to inmates at DOC facilities who were arrested for possession of contraband in the course of that visit, unless that visitor was subject to an Invasive Search on a separate occasion and was not arrested.

## REVISIONS TO THE INMATE VISIT PROCEDURES DIRECTIVE

34.     Plaintiffs and the City have agreed to revisions to the current Inmate Visitor Procedures policy, Directive 2007R-D.   The revised version of Directive 2007R-D to which the Parties agreed is identified by the unique identifier Grottano/City-IVPD.6.19.19 ("Revised Directive").

---

[2] As defined in Paragraph 23 herein.

35. The City shall promulgate the Revised Directive no later than thirty (30) days after the substantial completion of training of the applicable DOC staff on the Revised Directive. The City shall ensure full and proper dissemination of the Revised Directive through all appropriate channels.

## REVISIONS TO DOC TRAINING MATERIALS

36. Plaintiffs and the City have agreed to revise DOC's training materials regarding visitor searches, which will aid in training applicable DOC staff to engage in lawful interactions while searching visitors.

37. The training materials will include a revised DOC Correction Academy Instructor's Guide. The revised version of the Correction Academy Instructor's Guide to which the Parties agreed is identified by the unique identifier Grottano/City-IVPIG.6.19.19 ("Revised Instructor's Guide"). The City shall implement the Revised Instructor's Guide no later than six (6) months after the Preliminary Approval Date.

38. Defendants will create a Participants' Workbook no later than six (6) months after the Preliminary Approval Date. The Participants' Workbook will be used as a companion to the Revised Instructor's Guide.

## TRAINING OF APPLICABLE DOC STAFF

39. The City will substantially complete training of the DOC staff listed herein on the Revised Directive, Revised Instructor's Guide and Participant's Workbook within six (6) months of the Preliminary Approval Date. The City will train the following DOC staff:

    a.     Correction Officers assigned to and responsible for searching visitors at DOC facilities;

b.      Captains/Area Supervisors/Visit Supervisors assigned to and responsible for supervising correction officers responsible for searching visitors;

c.      DOC Special Operations Division staff, including canine staff;

d.      Visit Transport staff;

e.      The Central Intelligence Bureau staff; and

f.      Compliance And Safety Center staff.

40.      No DOC personnel shall be assigned to a visit post at a DOC facility unless they have completed the training described above at Paragraph 39.

41.      After this initial training has been completed, the DOC staff mentioned in Paragraph 39 will be required to undergo refresher training within six months of the initial training. The DOC staff mentioned in Paragraph 39 will then be required to undergo refresher training annually for two additional years.

## REVISIONS TO SIGNAGE

42.      Plaintiffs and the City have agreed to revisions to the Visitor Pat Frisk Poster to include explicit language describing the manner in which DOC staff may and may not search an inmate visitor, as well as permissible and non-permissible conduct. The revised version of the Visitor Pat Frisk Poster to which the Parties agreed is identified by the unique identifier Grottano/City-VPPFP.6.19.19 ("Revised Visitor Pat Frisk Poster"). The Revised Visitor Pat Frisk Poster will be printed in English and Spanish.

43.      The City will at all times display the Revised Visitor Pat Frisk Poster in prominent locations at the DOC Central Visit Center on Rikers Island and throughout visitor search areas at all DOC facilities.

44. DOC will take all necessary steps to ensure that the Revised Visitor Pat Frisk Posters are not defaced or removed from visitor search areas at DOC facilities.

## REVISIONS TO VISITOR PAT FRISK CONSENT FORM

45. Plaintiffs and the City have agreed to revisions to the Visitor Pat Frisk Consent Form, which DOC will provide to every visitor who is asked to submit to a pat frisk search irrespective of whether the visitor consents to a pat frisk search. The revised version of the Visitor Pat Frisk Consent Form to which the Parties agreed is identified by the unique identifier Grottano/City-VPFCF.6.19.19.

46. DOC will scan and store all completed Visitor Pat Frisk Consent Forms in a centralized location. The centralized location will be determined by DOC.

47. No later than thirty (30) days after the substantial completion of training of DOC staff on the Revised Directive, DOC will also update and promulgate Directive 4508R-E (Control of and Search for Contraband), Directive 4531R-A (Canine Units (K-9)); Special Operations Division Command Level Order No. 51/15, Visit/Consent Search Procedures; Lesson Plan F150306 Recruit Control of and Search for Contraband; and Recruit Notebook R-Control/Search Contraband No. F150306, to be consistent with the Revised Directive.

## ACCOUNTABILITY

48.     Prior to assigning or re-assigning any DOC staff to a post that includes responsibility for searching visitors or supervising visitor searches, DOC shall determine whether complaints of improper searches or any other information suggests that the DOC staff member may be unfit to search visitors or supervise visitor searches.  DOC shall not assign or re-assign any staff member who, based on complaints of improper searches or any other information, it determines may be unfit for an assignment involving visitor searches or the supervision of visitor searches.

## NOTICE PLAN

49.     Direct Mailing: Notice of this Civil Action and the Claim Form shall be provided to potential Class Members via direct mailing to all individuals who visited or attempted to visit an inmate at DOC facilities during the Class Period.  The address used for the initial mailing shall be the address provided to DOC by the visitor at the time of the most recent visit or attempted visit to an inmate during the Class Period.

50.     Publication Notice:  The Parties shall cause to be published a summary notice.  Such notice shall be published in the NY Daily News, NY Post, El Diario, Caribbean News, AM New York, and New York Amsterdam News; on Facebook and Instagram; on YouTube and/or local TV stations such as NY1 and Fox 5; and on MTA subways and buses. The cost of publication of these summary notices is included in the Administrative Costs.

51. Posting of Notice: A summary notice of this settlement shall be posted at visitor areas at DOC facilities, on MTA buses to Rikers Island, and at MTA bus stop shelters for the Q100 and Q101 MTA buses to Rikers Island.

## POST-SETTLEMENT OVERSIGHT

52. Plaintiffs and the City stipulate that changes to DOC's practices related to visitor searches, including training, supervision and accountability, will require oversight in order to implement the procedures outlined in this Stipulation. Plaintiffs and the City stipulate and agree that this oversight will end two years after the Final Approval Order, except as to Paragraph 52(i). The oversight will proceed as follows:

a. DOC shall provide to Class Counsel for review all final revised DOC Directives, Instructor's Guides and Participants' Workbooks regarding visitor searches that will be generated after the Final Approval Order.

b. DOC shall provide to Class Counsel copies of any audits, reports, and data analysis prepared by DOC regarding invasive visitor searches.

c. DOC shall provide to Class Counsel access to all visitor complaints received by DOC Constituent Services. Within sixty (60) days of the Preliminary Approval Date, DOC shall provide the first list of all visitor complaints. DOC shall provide the subsequent lists of all visitor complaints

every forty-five (45) days thereafter.

d.  Upon request, DOC shall provide to Class Counsel specified Pat Frisk Consent forms from DOC facilities. Class Counsel shall request the specified Pat Frisk Consent forms within 15 days of receipt of the visitor complaints from DOC Constituent Services as described in paragraph 52(c). Class Counsel shall transmit all of their requests for Pat Frisk Consent Forms in one communication per forty-five (45) day period. DOC shall provide those specified Pat Frisk Consent forms to Class Counsel within fourteen (14) days of Class Counsel's request.  DOC shall provide up to twenty-five (25) forms, plus ten (10) percent of the difference between the total number of complaints of invasive visitor searches per yearly quarter and twenty-five (25).

e.  Upon request, DOC shall provide to Class Counsel specified "Notice to Inmate/Visitor of Cancellation/Limitation/Denial of Visiting Privileges" forms, to the extent they exist, related to the Pat Frisk Consent forms provided in Paragraph 52(d). DOC shall provide these forms to Class Counsel within fourteen (14) days of Class Counsel's request. Class Counsel shall request the specified "Notice to Inmate/Visitor of

Cancellation/Limitation/Denial of Visiting Privileges" forms within 15 days of receipt of the visitor complaints from DOC Constituent Services as described in paragraph 52(c). Class Counsel shall transmit all of their requests for "Notice to Inmate/Visitor of Cancellation/Limitation/Denial of Visiting Privileges" in one communication per forty-five (45) day period.

f.   Upon request, DOC shall provide Class Counsel with information regarding whether the complainant was found with contraband and/or arrested, related to the Pat Frisk Consent forms provided in Paragraph 52 (d). Class Counsel shall request this information within 15 days of receipt of the visitor complaints from DOC Constituent Services as described in paragraph 52(c). Class Counsel shall transmit all of their requests for contraband and arrest information in one communication per forty-five (45) day period. DOC shall provide this information to Class Counsel within fourteen (14) days of Class Counsel's request.

g.   Upon request, DOC shall provide to Class Counsel access to the video footage related to the visitor complaints, at a location specified by DOC, to the extent video footage exists and the complainant can be identified in the video.

Access shall be for viewing only; Class Counsel will not be permitted to obtain copies of video footage. For DOC to provide the footage for viewing, Class counsel must use their best efforts to provide information concerning the facility, date, and approximate time as set forth on the relevant Pat Frisk Consent form. This request must be made within thirty-six (36) days of receipt of the list of visitor complaints as provided in Paragraph 52(c) Class Counsel shall transmit all of their requests for video in one communication per forty-five (45) day period. Any request to view video must be made with reasonable advance notice to DOC. DOC will preserve the requested video for no fewer than six (6) months.

h.  Upon request, DOC shall provide Class Counsel with a list of any investigations commenced by DOC into a visitor invasive search complaint (but no earlier than 21 days from the date of receipt of the list of complaints provided for in Paragraph 52(c)).

i.  Upon request, DOC shall provide to Class Counsel the closing memorandum from the associated Investigation Division investigation, related to the visitor complaint as set forth in Paragraph 52(c), to the extent an investigation was conducted. DOC will provide the closing memoranda no

later than thirty (30) days after the closing of the relevant Investigation Division investigation. DOC shall provide to Class Counsel ten (10) closing memorandum from Investigation Division investigations related to visitor invasive search complaints as set forth in Paragraph 52(c). DOC is not obligated to provide closing memoranda for investigations into alleged visitor invasive search incidents that occurred later than 21 months after the Final Approval Date, <u>regardless of the date the investigation closes</u>. DOC will provide such closing memoranda thirty (30) days after the closing of the relevant Investigation Division investigation

j.   Upon request, DOC shall provide Class Counsel with the disposition related to any formal DOC disciplinary action associated with the Investigation Division investigation related to the visitor complaint as set forth in Paragraph 52 (c).

i.   The information provided in the above subsections shall be confidential and DOC shall take steps necessary to protect confidential information, including but not limited to redactions of personal identifying information. If the investigation was

substantiated, Defendants will provide information sufficient to identify the DOC staff member with substantiated allegations.

k. Class Counsel shall be permitted to visit every DOC facility visit area twice, with a DOC legal escort, on a mutually agreed upon date. Class Counsel must provide DOC with notice at least 30 days in advance of their proposed visit. Class Counsel will not be permitted to speak to DOC staff working in the visit areas, but will be permitted to speak to visitors. Each day of visits will be no more than seven (7) hours in duration.

l. Class Counsel will be permitted to observe no more than six (6) training sessions, on mutually agreed upon dates. Class Counsel will be limited to silent observation and are not permitted to speak to DOC staff. Class Counsel are permitted, at the All-Parties' Meetings described in Paragraph 52(n), to provide feedback and recommendations to improve the training based on their observations, which DOC will consider.

m. No later than thirty (30) days after substantial completion of the initial training, DOC will provide Class Counsel with certification that the agreed-upon training is substantially complete, and a report on the number of DOC staff trained.

n. Defendants will convene three (3) All-Parties' Meetings, where Class Counsel can raise any concerns they have regarding implementation of this Settlement Agreement. Each All-Parties Meeting will be attended by an appropriate DOC Deputy Commissioner or Bureau/Assistant Chief. The meetings will be convened on mutually convenient dates in the sixth (6th), twelfth (12th), and twenty-second (22nd) months following the Final Approval Date. DOC shall respond to Class Counsel's concerns in accordance with the Dispute Resolution process set forth herein in Paragraphs 98 - 102.

## ATTORNEYS' FEES AND ADMINISTRATIVE COSTS

53. Class Counsel will make an application seeking Court approval for attorneys' fees of up to $5,400,000.00. Defendants reserve the right to respond to any motion by Class Counsel for attorney's fees.

54. The Parties have agreed that the administrative costs shall not exceed $500,000.00 (Five Hundred Thousand Dollars). The Claims Administrator will submit monthly statements of expenses to Class Counsel and the City. The City will not reimburse the Claims Administrator for any amount that exceeds $500,000.00 (Five Hundred Thousand Dollars). If the Administrative Costs are less than $500,000.00 (Five Hundred Thousand Dollars), the City will retain the remainder of these funds. A copy of the Claims Administrator's final accounting shall also be provided to the City.

## CLASS REPRESENTATIVE SERVICE AWARD PAYMENTS

55. Subject to the Court's approval, the City agrees to pay awards for the services provided to the class by the Class Representatives—including engaging in discovery and being deposed—as follows: Thirty-Thousand Dollars ($30,000) to Plaintiff Dana Grottano; Twenty-Thousand Dollars ($20,000) to Plaintiff D.M.; and Twenty-Thousand Dollars ($20,000) to Plaintiff N.D. These service award payments shall be in addition to any amounts otherwise due to them with respect to their individual claim as Class Members.

## CLAIMS AWARDS TO CLASS MEMBERS AND CLAIMS PROCESS

56. Subject to the terms and conditions of this Stipulation, the City agrees to pay up to Twelve Million, Five Hundred Thousand Dollars ($12,500,000.00) which shall be used to pay damages to Class Members as described herein.

57. Class Members who timely submit a Claim Form and who are eligible for payment under the Class Definition as set forth in Paragraph 32, and not excluded from the class as set forth in Paragraph 33, will receive approximately $4,000, except as set forth in Paragraphs 58 through 59 below.

58. Contraband Claimants, as defined in Paragraph 15, will receive up to $500. For every Contraband Claimant, an additional $500 will be set aside and apportioned among the non-contraband claimants on a pro-rata basis.

59. Individuals who were arrested for possession of contraband in the course of a visit during the Class Period will not receive payment unless on

a separate occasion that individual was subjected to an Invasive Search and was not arrested.

60.     Any funds remaining of the $12,500,000.00 after award payments to Class Members will revert to the City of New York one year and 180 days after the Effective Date for Payment. In the event the claims to be paid exceed $12,500,000.00, the amounts set forth in Paragraphs 57 and 58 will be reduced on a pro rata basis.

## FUNDING OF THE SETTLEMENT

61. No later than fourteen (14) days after the Preliminary Approval Order, the City shall deposit or cause to be deposited into a bank account designated by the Claims Administrator Three Hundred Thousand Dollars ($300,000.00) of the amount set forth in Paragraph 54, to cover the costs of the notice agreed to by the Parties and/or ordered by the Court as set forth in Paragraph 54.  Any such payment shall be debited against the Administrative Costs. If the Settlement is not ultimately approved by the Court, then all such funds paid to the Administrator, to the extent they are available after payment of all accrued class administration expenses, shall be returned to the City.

62.     Subject to the terms and conditions of this Stipulation and the approval of the Court, within forty-five (45) calendar days of the Effective Date for Payment, the City shall deposit or cause to be deposited into a bank account designated by the Claims Administrator, the Class Fund.

63.     In the event that this Settlement receives Final Approval, but the funds are not immediately paid due to an appeal by a third party, the City

22

will deposit the Class Fund in an interest bearing escrow account, and the interest accrued shall be added to the Class Fund for the benefit of the Settlement Class in the event that the settlement is finally approved and entered as a judgment. Should the settlement not be finally approved after exhaustion of all appellate avenues, all such funds, including interest earned on them, shall be returned to the City (except for class administration costs already expended by the Administrator). Should the settlement not be finally approved, or if for any other reason there is a delay in immediate payment by the City, the City shall have no claim for the funds advanced to the Administrator for notices against the Class Representatives, the Settlement Class, Class Counsel, or the Administrator for reimbursement of the advanced funds, except that any advance funds shall be credited towards any subsequent settlement in this Civil Action.

64.    No payment shall be made to eligible Class Members before the Effective Date for Payment. Claims will be processed between the date of Preliminarily Approval and the Effective Date for Payment.

65.    Within ninety (90) days of the Effective Date for Payment, the City will pay the Service Awards, as set forth in paragraph 55, such amounts shall be paid from funds other than the Class Fund.  Plaintiffs shall execute and deliver to the Defendants' Counsel all documents necessary to effect such payments to them, including, without limitation, General Releases for the incentive award payments, Affidavits of Status of Liens and W-9s.  Prior to tendering the requisite documents, Medicare-recipient Plaintiffs must obtain and submit a final demand letter from their Medicare provider(s) for the

reimbursement of any conditional payments made for the injuries claimed in this matter. A Medicare Set-Aside Trust may also be required if future anticipated medical costs are found to be necessary pursuant to 42 U.S.C. § 1395y(b) and 42 C.F.R. §§ 411.22 through 411.26.

66. Within ninety (90) days of the Final Approval Order, the City will pay Class Counsel any amount awarded as attorneys' fees by the Court, if neither party appeals the Court's award of attorneys' fees. Plaintiffs' Counsel shall execute and deliver to the Defendants' Counsel all documents necessary to effect such payments to them, including W-9s.

67. The Parties have proposed to the Court for approval the following settlement schedule:

- Notice given to the class: 30 days after the Preliminary Approval Date;

- Deadline to Object/Opt out: 75 days after the Preliminary Approval Date;

- Final Approval Hearing: 90 days after the Preliminary Approval Date;

- Deadline to Submit Claims: 180 days after the Preliminary Approval Date;

**CLAIMS ADMINISTRATOR**

68. The Claims Administrator shall (1) transmit the Notice and Claim Forms, in both English and Spanish, to Class Members by means approved by the Court; (2) establish a website and toll-free phone number where

information about the settlement will be available to Class Members and where Class Members can ask, and receive responses to, questions; (3) publish the Notice by means agreed to by the Plaintiffs and the City, and approved by the Court; (4) respond to questions from Class Members; (5) review and assess the validity of information in the Claims Forms submitted by Class Members; (6) calculate the amounts of payments to the individual Class Members consistent with this Stipulation; (7) arrange for and distribute checks containing payments to Class Members as set forth in this Stipulation; (8) arrange to return to the City any amounts from the Class Fund that revert pursuant to the terms of this Stipulation; (9) create a database of Class Members who have filed timely and valid Claim Forms; (10) create a database of Opt-Outs; (11) deduct any applicable liens from the claim awards and forward these deductions to the City Comptroller's Office or any other relevant agencies as set forth in Paragraph 77; and (12) perform any other duties necessary to fulfill the foregoing responsibilities and any other responsibilities set forth in this Stipulation.

69. The City agrees to facilitate the work of the Claims Administrator by, among other things, obtaining and providing to the Claims Administrator, information, and data, in the City's possession, which are relevant and appropriate to facilitate the administration of the Class Fund, to the extent such information is disclosable to the Claims Administrator under federal, state and/or local laws.

70. Within 20 days of the Preliminary Approval Order, the City will provide the Claims Administrator with Excel spread sheets containing the full

25

names of all eligible Class Members, along with their aliases (if known), date of birth, and last known address to determine the Class Members' last known address during the Class Period. Where necessary and/or appropriate, the Parties shall cooperatively seek appropriate court orders to obtain the addresses of eligible Class Members. The City's obligation regarding the information listed in this paragraph only extends to the extent an eligible Class Member provided accurate and complete information.

71.     Information provided to Class Counsel and the Claims Administrator pursuant to the prior two paragraphs shall be confidential, and may not be disclosed to anyone except Class Counsel, Defendants' Counsel, certain City agencies (including, but not limited to, DOC, New York City Human Resources Administration ("HRA"), New York City Department of Finance ("DOF"), and the New York City Comptroller's Office), the Claims Administrator, or the Court under seal. Class Counsel and the Claims Administrator shall not disclose the confidential information to any person not a member of their staff and only when necessary to facilitate the terms and conditions of this settlement.  To facilitate DOC's release of personal identifying information of the Class Members, the parties will submit to the court a proposed order related to the release of the information in DOC's possession to the Claims Administrator, HRA, DOF, City Comptroller's Office, and any other relevant City agency. To the extent Class Counsel or the Claims Administrator seeks to disclose this information to any other person or entity, they must first seek Defendants' Counsel's consent in writing. In addition, after consent is given, but before

disclosing the confidential information to anyone else, including, any agent, contractor, or expert, the Claims Administrator or Class Counsel shall first have such person or organization sign the confidentiality agreement attached thereto as Exhibit A. A signed copy of Exhibit A shall be provided to Defendants' Counsel by expedited transmission immediately but no later than two business days after execution. Class Counsel and the Claims Administrator shall take all reasonable steps to insure that the confidential information concerning all proposed Class Members and eligible Class Members, remain private and confidential. In addition, the information provided to Class Counsel and the Claims Administrator regarding the proposed Class Members and eligible Class Members will not be used for any other purpose other than in this Civil Action and for the administration of this Stipulation.

72. The Administrator will apply for a tax ID number, if necessary, and will take all necessary steps for the timely creation of the Class Fund bank account prior to the forty-fifth day from the Final Approval.

73. The Administrator shall provide to the City with the Employer Identification Number for the Class Fund bank account, and a completed W-9 Form and bank routing information for the Class Fund bank account, within 45 days of the Final Approval.

74. The Administrator will treat income taxes as the first priority for payment, and therefore, shall, on a quarterly basis, set aside an amount sufficient to pay all income taxes, if any, owed by the Class Fund bank account on interest earned to date. The Administrator shall pay all income taxes, if any, on a

quarterly basis. The City Comptroller's Office shall have the right to inspect and copy all tax forms (and worksheets), and monthly bank statements of the Class Fund bank account. The City will not be responsible for taxes, penalties, or interest incurred on the Class Fund. The Claims Administrator shall issue all required IRS forms.

75.     Within ten (10) days of receiving the final Class List, the Claims Administrator shall mail by first class mail, postage prepaid, to all persons on the final Class List for whom an address is available a copy of the Notice and Claim Form.

76.     Class Members must submit a completed Claim Form to the Claims Administrator by the Bar Date unless such date is extended by order of the Court. The Administrator shall reject claims that are untimely. A Claim Form is deemed submitted upon deposit in a postpaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the U.S. Post Office, when submitted for delivery by a commercial express carrier, when emailed to the Claims Administrator at the settlement website or when actually received by the Claims Administrator, whichever date is earlier.

77.     Every thirty (30) days, after the Preliminary Approval Order, the Claims Administrator shall provide the Parties a list of those persons who are preliminarily eligible so that the City may on a rolling basis determine whether that person's Award Amount will need to be reduced due to New York child support liens.  No benefits currently received by eligible Class Members may be terminated or reduced as a result of claims awards unless required by

federal or state law or regulation. This does not constitute a waiver of any right to separately recoup overpayments or any amounts owed solely to federal or state governments if such is required by federal or state law or regulation. Within thirty (30) days of receiving the final list of those persons preliminarily eligible to receive payment under this settlement, the City shall provide the Claims Administrator and Class Counsel with a list of those persons who have New York child support liens and the amount that shall be deducted from each persons' claim payment by the Claims Administrator to be forwarded to the beneficiary of the child support lien by the City Comptroller's Office. Prior to providing this list, the City shall send each person owing child support liens a notice describing that they owe these liens and information on how to file a challenge regarding the deduction of the child support liens from the Claims Award. If the City later determines that the amount of the liens was incorrect, the City shall directly pay that person the over-deduction of the amount that was withheld from that person's Claims Award. The Claims Administrator shall follow the same procedure set forth herein to the extent that parking violation liens will be assessed against any claim payment by the Department of Finance. The Parties agree to work in good faith to not have DOF assert parking violation liens against any claim payment.

78.    Any eligible Class Member who fails to submit a Claim Form by the Bar Date or any court mandated extension, shall be forever barred from receiving payments pursuant to the Stipulation except with the consent of the Parties. Such person shall be bound by all of the terms of the Stipulation, and

the Judgment entered herein, including but not limited to the release of all Released Persons of all settled class claims as defined in paragraph 87.

79.     The Administrator shall mail letters and/or otherwise contact Class Members who by the Bar Date submit partially completed Claim Forms that are deficient to provide them up to thirty (30) additional days to validate their Claim Forms.

80.     Rights and claims hereunder shall survive the death of eligible Class Members. If an eligible Class Member who is eligible to receive monetary relief under this Stipulation is deceased, the amount payable to such deceased eligible Class Member shall be paid to the appropriate representative of their estate. The representative of the estate shall provide proof of death and appropriate documentation to show that they are properly a representative of the estate. If the Administrator determines, after reasonable opportunity has been given, that there is insufficient information or proof regarding the deceased person's estate to permit such payment, the deceased person's share shall be distributed in accordance with the terms set forth in paragraph 82 for the distribution of returned checks.

81.     To the extent that the Claims Administrator and/or Class Counsel receive inquires that they cannot resolve, the Claims Administrator and/or Class Counsel shall group such inquires and submit them in writing to a designated person at the Office of Corporation Counsel on a recurring basis, but not more often than a weekly basis. Results of the investigations of such inquires will be provided in writing.

82.     Class Counsel has the discretion to void checks mailed to eligible Class Members and not cashed within 120 days of issuance. Notice of this procedure will be provided at the time the checks are issued. Class Counsel, on written notice to the City and the Court, shall have the discretion to: (a) reissue the checks; or (b) add the amount of the voided checks back to the Class Fund; or (c) issue checks to persons who make late claims for good cause shown. If permission is granted to make late claims for good cause shown, any amount due and owing attributable to New York child support liens, and if applicable parking violations liens, shall be deducted and forwarded to the City prior to any payment to an eligible Class Member who submitted a late claim.

83.     The Claims Administrator is permitted for good cause shown (including proper documentation and proof of authority) to issue checks in the name of a person other than the eligible Class Member.

## EXCLUSION FROM THE SETTLEMENT CLASS

84.     Any potential eligible Class Member who wishes to be excluded from the Settlement Class must, within 75 days of the Preliminary Approval Order, mail a request to be excluded from the Settlement Class ("Request for Exclusion") to the Claims Administrator. Any Request for Exclusion must be in writing and state the name, date of birth, address, and telephone number (if any) of the person requesting exclusion and contain a clear statement communicating that such person elects to be excluded from the Settlement Class.

85.     Originals of all Requests for Exclusion shall be retained by the Claims Administrator until such Originals are filed with the Court. Named Plaintiffs will not request exclusion pursuant to this paragraph. A list of all exclusions, as well as a copy of the written Requests for Exclusions sent to the Claims Administrator, shall be provided to Class Counsel and Defendants' Counsel.

86.     Any eligible Class Member who does not timely file a Request for Exclusion shall conclusively be deemed to have become an eligible Class Member and to be bound by this Stipulation and by all subsequent proceedings, orders, and judgments herein.

## RELEASES

87.     Within five (5) business days of when the Class Fund is deposited by the City, all claims in this Civil Action will be dismissed, with prejudice, and without costs, expenses, or fees in excess of the amounts authorized by paragraphs 53-54 above and the Court. Upon the Effective Date of this Stipulation, in consideration for the agreements between the Parties and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, all Class Representatives and Class Members, on behalf of themselves, their heirs, executors, administrators, predecessors, successors and assigns shall hereby release, remise and forever discharge any and all of the Defendants as well as their past or present affiliates, subsidiaries, parents, successors and predecessors, officers, directors, agents, employees, attorneys, advisors, insurers and any person, firm, trust, corporation, officer, director or

other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any Defendant, and the legal representatives, heirs, successors in interest or assigns of the Defendants, from each and every Released Claim, and shall forever be barred and enjoined from initiating, continuing, filing or otherwise prosecuting any Released Claim against any of the Released Parties. Unless a Class Member opts out of the Settlement pursuant to paragraph 84-86 above, this release shall apply whether or not such Class Member has executed and delivered a Claim Form or otherwise actively participated in the settlement.

88. Every Class Member, except for those who Opt-Out pursuant to paragraphs 84-86 above, shall be deemed to and shall have knowingly and voluntarily waived, released, discharged and dismissed the Released Claims, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them. No Opt-Out shall share in any monetary benefits provided by this Stipulation.

89. The Parties and Class Members acknowledge that the covenants and promises made by the City and Defendants herein constitute adequate consideration in exchange for the Released Claims.

90. Nothing in this Stipulation shall be construed to bar any claims of Class Representative or Class Members based on or arising out of events occurring after the date of the Preliminary Approval Order. Nor shall anything in this Stipulation be construed to bar any claims by Class

Representatives or Class Members based on or arising out of claims in any certified class action, other than this Civil Action, in which the Class Representative or Class Member already is a member of the certified class.

91.     The Parties hereby agree not to appeal any aspect of this Stipulation, or to otherwise collaterally attack or challenge this Stipulation, except any award of attorneys' fees.

## MUTUAL FULL COOPERATION

92.     The Parties agree that they will fully cooperate with each other to effectuate and implement all terms and conditions of this Stipulation and exercise good faith efforts to accomplish the terms and conditions of this Stipulation.

## EFFECT OF THE STIPULATION ON THE PENDING CIVIL ACTION AND CONTINUING JURISDICTION

93.     The Court, and any appellate court from which appeals of the Court's decisions may properly be brought, shall retain jurisdiction for the implementation and enforcement of the terms of this Stipulation, and all Parties hereto and their counsel shall submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

94.     Plaintiffs will take all necessary and appropriate steps to obtain approval of this Stipulation and dismissal of this Civil Action with prejudice.  If the Court approves this Stipulation, and if there is an appeal from such decision, Defendants will join Plaintiffs in defense of this Stipulation.

95.     On or after the Final Approval Date, the Court will dismiss the above-captioned action, with prejudice and without costs, expenses, or fees in excess of the amount authorized by the Court or agreed upon by the Parties in accordance with Paragraphs 53-54 herein.

96.     The terms of this Stipulation shall be a full, final, and complete resolution of this Civil Action.

97.     The Parties reserve their right to appellate review of the Court's decisions concerning compliance under this Stipulation, as governed by applicable law.

## DISPUTE RESOLUTION

98.     If during the two-year oversight period described in Paragraph 52, Class Representatives and/or Class Members believe that DOC has failed to comply with the terms of the Stipulation, Class Counsel shall provide written notification of such non-compliance to the DOC General Counsel and to the Office of Corporation Counsel within fifteen (15) calendar days of learning of such facts.

99.     Following receipt of notice of non-compliance, the parties shall meet and confer within fifteen (15) business days (or on some other date mutually agreed upon by the parties) in an attempt to arrive at an amicable resolution of the dispute.

100.    Should Class Counsel contend that the dispute remains unresolved five (5) business days after the meeting described in Paragraph 99,

Class Counsel shall inform the DOC General Counsel and the Office of the Corporation Counsel in writing of the alleged continued non-compliance.

101. Following the notice of alleged continued non-compliance described in Paragraph 98, Class Counsel may apply to the assigned magistrate judge for an order directing specific performance of the term or terms of the Stipulation. Class Counsel cannot make such an application before fourteen (14) business days after the notification of continued non-compliance to DOC and the Office of the Corporation Counsel described in Paragraph 100.

102. Class Counsel may not seek judicial relief in this action for isolated or *de minimus* violations of this Stipulation.

103. Information and Documents provided to Class Counsel during the Post-Settlement Oversight shall be confidential and may not be disclosed to anyone except Class Counsel, DOC, Defendants' Counsel, certain applicable City agencies, or the Court under seal. Class Counsel shall not disclose the confidential information or documents to any person not a member of their staff and only to their staff where necessary to facilitate the terms and conditions of this settlement or the Post-Settlement Oversight. To the extent Class Counsel seeks to disclose any information or documents provided pursuant to this Stipulation to any other person or entity, they must first seek Defendants' Counsel's consent in writing. In addition, after consent is given, but before disclosing the confidential information or documents to anyone else, including, any agent, or contractor, shall first have such person or organization sign the Exhibit A attached to the Confidentiality Order associated with this Stipulation. A

signed copy of the Exhibit A shall be provided to Defendants' Counsel by expedited transmission immediately but no later than two business days after execution. Class Counsel shall take all reasonable steps to insure that the confidential information and documents remain private and confidential. Appropriate and reasonable safeguards (at least as stringent as those used to protect plaintiffs and Class Counsel for their own information and documents) must be imposed to prevent the use of the confidential information and documents for any other purpose other than to execute the terms and conditions of this settlement or the Post-Settlement Oversight.

## MODIFICATION OF THE STIPULATION AND ORDER

104.    This Stipulation represents the entire agreement among the Parties, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein, or to determine the meaning of any provisions herein.  This Stipulation can be modified only on the written consent of all the Parties.

## NOTIFICATION OF PARTIES UNDER THE STIPULATION OF SETTLEMENT

105.    All notices contemplated by this Stipulation, other than notice to the class pursuant to Paragraphs 49-51, shall be delivered by hand and by email.

## COUNTERPARTS

106.    This Stipulation may be executed in one or more counterparts, each of which shall be an original and all of which together shall

constitute one and the same instrument, and will be binding when it has been executed and delivered by the last signatory. A facsimile or scanned signature is an original signature for purposes of this Stipulation.

## GOVERNING LAW

107. This Stipulation shall be governed by and construed and interpreted according to the laws of the State of New York without reference to conflicts of law principles.

## MUTUAL INTERPRETATION

108. The Parties stipulate that this Stipulation was negotiated on an "arm's length" basis between parties of equal bargaining power, and mediated by Judge Francis (Ret.) as a third party neutral, to resolve a bona fide dispute between the parties concerning liability and the availability of equitable relief and damages. Also, Class Counsel and counsel for Defendants jointly drafted this Stipulation. Accordingly, this Stipulation shall not be construed in favor of or against any of the Parties. Neither Party shall be considered the drafter of this Stipulation for purposes of interpreting the Stipulation, or the application of any rule of construction.

## BINDING UPON SUCCESSORS

109. This Stipulation shall be binding upon and inure to the benefit of the Parties and their respective personal representatives, administrators, heirs, successors, and assigns.

## NULLIFICATION

110.     This Stipulation is null and void in the event that any of the following do not occur:

      i. Preliminary Approval of this Stipulation by the Court; or

ii. Final Approval by the Court.

Dated: June 20 2019
New York, NY

_R. Ifil_ (signature)
Sherrilyn Ifill
Director Counsel
Janai Nelson
Samuel Spital
Jin Hee Lee
Raymond Audain
Marne Lenox
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street 5th Fl.
New York, NY 10006
(212) 965-7715
raudain@naacpldf.org

Bruce E. Menken
Scott Simpson
Beranbaum Menken LLP
80 Pine Street, 33rd Floor
New York, NY 10005
(212) 509-8088

Oren Giskan
Giskan Solotaroff & Anderson LLP
90 Broad Street, 10th Floor
New York, NY 10004
(212) 847-8315

*Counsel for the Plaintiff Class and
Individual Plaintiff Class
Representative*

*SO ORDERED:*

_Kimberly M. Joyce_ (signature)
Kimberly M. Joyce
Genevieve Nelson
Angharad Wilson
Katherine Weall

Corporation Counsel of the City of
New York
100 Church Street
New York, New York 10007

*Attorneys for Defendants*

_____
HONORABLE RICHARD M. BERMAN
United States District Judge

Dated: _____, 2019

40