**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------- x
DANA GROTTANO, et al., :
                 Plaintiffs, :
                               :          15 CV 9242 (RMB)
                               :
- against - :
                               :      **DECISION & ORDER**
                               :
CITY OF NEW YORK, et al., :
                  Defendants. :
-------------------------------------------------------------- x

        This Decision & Order resolves Plaintiffs' Motion for Attorneys' Fees and Expenses, dated September 21, 2021, seeking $4.5 million plus $14,651.48 in expenses ("Motion"); and Defendants' Cross Motion for Reimbursement of Administrative Costs, dated October 8, 2021 ("Cross Motion"), seeking "reimbursement from Class Counsel's attorneys' fees for the [amount] paid to the Claims Administrator" in excess of $500,000. For the reasons set forth below, the Court awards to Class Counsel the total amount of $2.6 million in attorneys' fees. The Court awards $10,574.94 in expenses; an additional $998.88 may be awarded subject to Class Counsel providing supporting documentation. The Court also orders and directs Class Counsel to reimburse and/or share with Defendants one half (50%) of the total amount of claims administration fees paid or to be paid to the Claims Administrator in excess of $500,000.

      **I.**      **Motion for Attorneys' Fees and Expenses**

        The parties' settlement agreement, dated June 20, 2019 ("Settlement Agreement"), provides for distribution of a $12.5 million settlement fund ("Settlement Fund") to class members who were subjected to invasive searches when visiting New York City Department of Correction ("DOC") facilities between November 23, 2012 and October 30, 2019. Settlement Agmt. ¶¶ 11, 30. The Settlement Agreement also includes an injunction against the DOC which requires changes to DOC visitor search protocols, including a two-year period of oversight of DOC visitor searches

1

by Class Counsel. Settlement Agmt. ¶¶ 34-52, 56; *see also Grottano v. City of New York*, 2021 WL 5563990, at *1 (S.D.N.Y. Nov. 29, 2021).

The Settlement Agreement also provides that "[e]ach eligible claimant will receive a minimum of $1,000, unless they are part of the sub-category of individuals who were found with contraband during their visit to a DOC facility," in which case "they will receive $500." *See* Stipulation Modifying the Class Action Settlement Agreement, dated Apr. 22, 2021, ¶ 11, ECF No. 322-2 ("Settlement Modification"). The settlement checks were mailed to all class members in early 2022. *See* Ltr. from Oren Giskan, dated Apr. 12, 2022, at 1, ECF No. 442. As detailed in the Court's November 29, 2021 Decision and Order, Defendants also advised the Court that they have implemented the injunctive relief by, among other things, revising DOC "policies and procedures concerning searches of visitors to [DOC] facilities" and "training materials regarding visitor searches." *Grottano*, 2021 WL 5563990, at *1–2. DOC has also revised its visitor "pat-frisk poster" which is "prominently placed in all visit areas, so that visitors know what to expect if they consent to a pat-frisk search." *Id.* During the oversight period, which began on November 29, 2021, "Class Counsel [are] permitted to visit every DOC facility [twice] with a DOC legal escort," and "observe up to six officer training sessions." Ltr. from Oren Giskan, dated Apr. 12, 2022. DOC is providing "Class Counsel all visitor complaints received by DOC Constituent Services, and Class Counsel will . . . review the complaints for any indication of improper search practices." *Id.*; *see also* Settlement Agmt. ¶ 52.

The Settlement Agreement also provides for Class Counsel "seeking Court approval for attorneys' fees of up to $5,400,000.00," which are to be paid by Defendants **independently** of the Settlement Fund. *See* Settlement Agmt. ¶ 53; Mot. at 10 ("[A] fee award in this case will not decrease the settlement fund because it will be paid separately" by Defendants.). Class Counsel

have submitted billing records ("Class Counsel Billing Records") as well as a supplemental declaration, dated March 4, 2022, stating that their billing records reflect a lodestar amount (before applying a multiplier) of $2,561,625.65. *See* Supp. Decl. of Scott Simpson, dated Mar. 4, 2022, ¶ 20, ECF No. 427 ("Simpson Decl."). Class Counsel argue that a multiplier of 1.76 should be applied to the lodestar amount "because [the case] required an extraordinary amount [of] time and labor [and] involved difficult and complex legal questions, significant risk, and a defendant with substantial resources" and because a multiplier would compensate for the time spent "overseeing the administration of the settlement and monitoring the injunctive relief." Mot. at 10–11, 14; *see also* Simpson Decl. ¶¶ 19–20.

Class Counsel argue that a $4.5 million attorneys' fee award is reasonable under the factors articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) because, among other things, (1) "three [law] firms spent thousands of hours investigating, litigating, and settling this sprawling case"; (2) the case "successfully challenged systemic constitutional violations [and] ensured that thousands of visitors to City jails receive just compensation for their injuries . . . and [Class Counsel] secured a robust injunctive relief regimen that will help to protect hundreds of thousands of visitors"; (3) "the case appears to be the first damages class action filed on behalf of visitors to correctional facilities who were subjected to unlawfully invasive searches"; (4) Class Counsel's representation reflects "substantial civil rights and class action experience"; (5) the requested award "is well within the range of similarly sized class action settlements"; and (6) "the proposed fee award strikes the right balance between moderation and encouraging litigants to bring forward substantive and impactful cases that are crucial to enforcing our constitutional liberties." Mot. at 15–21.

Defendants oppose the Motion by memorandum, dated October 8, 2021, arguing that

"Class Counsel's total fee award should be limited to between $2.4 and $2.6 million" and that expense reimbursement should be reduced to $10,574.94. Cross Mot. at 2. Defendants also submitted a letter, dated March 11, 2022, in further opposition to the Motion stating, among other things, that a reduction of Class Counsel's "lodestar to $2,000,000 . . . would be appropriate [and that] [m]ultiplying the adjusted lodestar of $2,000,000 by **1.2 to 1.3** would yield a range of $2.4 - $2.6 million for the attorney's fee award." Defs. Ltr., dated Mar. 11, 2022, at 2, ECF No. 430 (emphasis added).

Defendants contend that Class Counsel's requested fee award of $4.5 million is unreasonable under the six *Goldberger* factors because: (1) while "Class Counsel expended a substantial amount of time and labor on this case . . . [their] time was spent inefficiently and their records have a number of deficiencies"; (2) no "legal or evidentiary difficulties [] made this case more complex to litigate than other class actions against municipal entities"; (3) litigation here was not "any riskier than any other class action against the City of New York"; (4) "courts should not necessarily award an increased fee where counsel simply displays the general level of skill expected"; (5) "a [fee award] closer to 15.4% - 16.5%, or $2.4 million - $2.6 million, is reasonable, and would be in line with prior class action settlements decided by this Court"; and (6) a lower award would "balance[] the overarching concern for moderation with public policy considerations of encouraging the filing of Section 1983 actions." Cross Mot. at 19–22.[1]

---

[1] Defendants also argue that Class Counsel's lodestar should be reduced because their billing records reveal, among other things, "inefficient staffing" and "vague [time] entries." *Id.* at 10-14. Defendants do not take issue with most of Class Counsel's expenses, but point out that Class Counsel did not provide certain supporting documentation and that Class Counsel "agreed . . . to split the [mediation] payment . . . on the limited issue of whether or not there should be a $1,000 minimum payment to claimants." *Id.* at 22–23.

## II.    Problems with Initial Claims Notice and Much Lowered Expectations

As discussed in the Court's November 29, 2021 Decision and Order, the parties' first effort in December 2019 to notify potential class members of the settlement was seriously flawed. *See Grottano*, 2021 WL 5563990, at \*3. The original notice and claim form to potential class members ("Initial Claims Notice") stated that the Settlement Agreement includes cash payments of up to $12,500,000 to the class and that **"Settlement Class Members will be eligible to receive a payment of approximately $4,000.00."** Initial Claims Notice at 1, 4, ECF No. 228-2 (emphasis added). "[C]laim forms were mailed to the approximately 300,000 people who visited DOC facilities during the class period" and "[n]otice of the proposed settlement was also provided through extensive publication" (including newspapers, public transit postings, and social media). Mot. at 5. In response to the Initial Claims Notice, more than **40,000** people submitted claims, which would have yielded average payments of **less than $300 per claimant**—far below the Initial Claims Notice's estimate of "approximately $4,000." *See Grottano*, 2021 WL 5563990, at \*3.

**Following this serious underestimation by the parties of the number of potential claimants, the parties reversed course and returned to the negotiating table to address the problems with the Initial Claims Notice. And, the Court was called upon to oversee these unforeseen proceedings more intensively than in any other class action on the Court's docket.** The parties also obtained the assistance of a highly regarded and expert class action mediator, Harvard Law Professor William B. Rubenstein, who, along with his students, dedicated hundreds of hours to this case *pro bono. See Grottano*, 2021 WL 5563990, at \*3. The parties spent over a year re-negotiating a new settlement structure and fashioning a new claims notice to supersede the Initial Claims Notice.

The new notice and claim form explained:

> [The Initial Claims Notice] advised you that you would be eligible

> to receive a payment of "approximately $4,000" to settle your claim. In response to the [Initial Claims Notice], a significantly larger number of people than expected made claims. Because of that, you would have received less than $1,000 under the original terms of the class action settlement. . . . Under the new terms of the class action settlement . . . you will receive **at least $1,000** . . . .

Supplemental Notice at 1, ECF No. 322-1 (emphasis in original). Among other things, the new notice and claim form required substantial additional information from claimants to enable the parties better to determine each claimant's eligibility to participate in the settlement, including "the date and location of the searches they experienced as well as [ ] a narrative description of those searches." Decl. of Bruce Menken, dated Aug. 13, 2021, ¶ 29, ECF No. 335; *see also* Settlement Modification ⸗ 3. The new notice and claim form was mailed to the same 40,000 individuals who had submitted claims in response to the Initial Claims Notice on May 16, 2021. *See Grottano*, 2021 WL 5563990, at *3. And, it ultimately resulted in approximately 12,500 substantiated claims rather than the 40,000 claims submitted in response to the Initial Claims Notice. *Id.* at *4. As the new notice and claim form indicated, Defendants agreed to a $1,000 minimum payment for all verified claims. Settlement Modification ⸗ 11.

**Owing, in part, to the need for extensive revisions of the Initial Claims Notice and attendant proceedings, the Court has extensive familiarity with this case.** *See, e.g.*, Tr. of Apr. 8, 2021 Conference at 11:3-8 (Court: "[I]t seems to me that you have to explain why all those people that submitted claims before are not getting paid based on their doing what you asked them to do . . . . It does not do that. It does not explain what happened clearly, definitively."); Tr. of Apr. 20, 2021 Conference at 19:22 – 20:7 (Defendants' counsel: "[T]he City sent back our edits for consistency . . . to the supplemental notice. . . . So I think the Court just needs to review the City's edits to the supplemental notice document."); *see also In re IndyMac Mortg.-Backed Sec. Litig.*, 94 F. Supp. 3d 517, 521-22 (S.D.N.Y. 2015), *aff'd*, 673 F. App'x 87 (2d Cir. 2016) (citation

omitted) (court was "intimately familiar with the nuances of the case" and found that requested attorneys' fee award was "unreasonably high").

### III. Cross Motion for Reimbursement of Administrative Costs

On October 8, 2021, Defendants filed their Cross Motion which seeks reimbursement from "Class Counsel's [attorneys'] fee award" of claims administration fees that Defendants have paid or will pay to the Claims Administrator in excess of $500,000. Cross Mot. at 23–25. Defendants contend that they should be reimbursed for payments they have made or will make to the Claims Administrator totaling more than $500,000 because: (1) "the Settlement Agreement provides that Defendants would not reimburse the Claims Administrator for any amount in excess of $500,000"; and (2) decisions regarding the Initial Claims Notice that Defendants opposed led to the new notice, additional proceedings, protracted claims period, and overrun of administrative costs. *Id.* at 24.

Class Counsel oppose the Cross Motion, arguing that: (1) Defendants "negotiated and agreed to the [$159,024] additional costs" of the first round of claims administration; and (2) Defendants also agreed to the Initial Claims Notice which "did not seek specific information about claimants' searches. . . . [Defendants] knew the costs of sending a second claim form and . . . . the costs of reviewing the claim forms. And [Defendants] agreed to all of it." Pls. Reply Br. at 10.

### IV. Legal Standard

In evaluating an application for attorneys' fees, "the trend in the Second Circuit is toward the percentage method . . . ." *Perez v. Ultra Shine Car Wash, Inc.*, 2022 WL 2129053, at *5 (S.D.N.Y. June 14, 2022) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). "[T]he lodestar remains useful as a baseline even if the percentage method is [ ] chosen." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Where a court

awards fees on a percentage basis, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" and the Court need not "exhaustively scrutinize[]" billing records. *Id*. "[N]o matter which method is chosen, district courts should [ ] be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citation omitted).

Where the money paid to the attorneys is entirely independent of money awarded to the class, it has been said that the Court's fiduciary role in overseeing the award is reduced because there is no conflict of interest between attorneys and class members. *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). **"Nevertheless, a court must still assess the reasonableness of the fee award . . . . [by] look[ing] to the factors specified in *Goldberger* . . . ."** *Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) (emphasis added) (internal quotation marks and citation omitted); *see also Schwartz v. Intimacy in N.Y., LLC*, 2015 WL 13630777, at *6 (S.D.N.Y. Sept. 16, 2015) (employing the percentage of the fund method with a lodestar cross check and analyzing the *Goldberger* factors ); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *19 (S.D.N.Y. Mar. 24, 2014). A court may reduce an attorneys' fee award where there is "significant mismanagement of the claims administration process." *In re PaineWebber Ltd. P'ships Litig.*, 2003 WL 21787410, at *2 (S.D.N.Y. Aug. 4, 2003); *accord Trinidad v. Pret a Manger (USA) Ltd.*, 2014 WL 4670870, at *11 (S.D.N.Y. Sept. 19, 2014) (reducing requested attorneys' fee award where class counsel "may have led class members to overestimate their shares of the settlement").

## V.   <u>Analysis: Motion for Attorneys' Fees and Expenses</u>

Applying the *Goldberger* factors, employing the percentage method with a lodestar cross

check, and considering that the City of New York will be paying the legal fees, the Court finds that Class Counsel's request for $4.5 million in attorneys' fees ("Requested Award") is excessive. The Court awards to Class Counsel $2.6 million as the total legal fees in this case, which equates to 20.8% of the $12.5 million Settlement Fund.[2] The Court also awards $10,574.94 in expenses, and an additional $998.88 subject to Class Counsel providing certain supporting documentation for the $998.88. *See infra* Section VI.

Class Counsel suggests that the Court use $17.7 million, rather than the $12.5 million Settlement Fund with reference to the percentage of the fund. According to Class Counsel, $17.7 million represents the total "benefit to the class" and "is comprised of the [S]ettlement [F]und [$12.5 million], the [requested] attorneys' fees [$4.5 million], and the settlement administration costs (approximately $700,000, to date)." Mot. at 1 n.3. In this District, when awarding fees on a percentage-of-the-fund basis, the denominator is usually the settlement *net* of costs. *Tapia v. Lira*, 2021 WL 5086300, at *4 (S.D.N.Y. Nov. 2, 2021) (emphasis in original) (internal quotation marks and citation omitted). If, *arguendo*, the Settlement Fund were to be "pooled" together with the requested attorneys' fee award and the claims administration costs, a $2.6 million award would represent 14.7% of the total. *See Shapiro*, 2014 WL 1224666, at *19 (attorneys' fee award represented 7.6% of sum of settlement fund, attorneys' fees, and administrative costs).

### A.  The *Goldberger* Factors Support an Award of No More Than $2.6 million in Legal Fees

The first *Goldberger* factor—"time and labor expended by counsel"—weighs in favor of reducing the Requested Award. *See Trinidad*, 2014 WL 4670870, at *10. While Class Counsel's

---

[2] The Court adheres to the practice of calculating the percentage of legal fees in reference to the Settlement Fund rather than to the sometimes so-called total benefit to the class. *See Tapia v. Lira*, 2021 WL 5086300, at *4 (S.D.N.Y. Nov. 2, 2021); *cf. Hart v. BHH, LLC*, 2020 WL 5645984, at *8 (S.D.N.Y. Sept. 22, 2020).

records demonstrate that they have dedicated some 5,816 hours to this case, the records also include time entries for unanticipated investigation, drafting, negotiations, court appearances, and protracted settlement re-negotiations attributable to the need to correct the flawed Initial Claims Notice process and to devise a workable supplemental notice and claim form (with considerable help from Professor Rubenstein). *See* Class Counsel Billing Records ("Legal research re high claims rate"; "TC w/Prof Rubenstein re: various options, brainstorming on dealing with notice and claims rate issues"; and "TC w/all counsel re: supplemental notice[]"); *see also* Decl. of Bruce Menken, dated Sept. 21, 2021, ¶¶ 9-15, ECF No. 345 ("Menken Decl."); Cross Mot. at 21. The Court has also considered and factored into the fee award the fact that Class Counsel is expected (if not required) to spend some time overseeing injunctive relief over the next year or so. *See* Simpson Decl. ¶ 16.[3]

The second and third *Goldberger* factors—"the magnitude and complexities of the litigation" and "the risk of litigation"—also weigh in favor of reducing the Requested Award. To be sure, this case revealed "an invidious and disturbing practice that was allegedly carried out for years at New York City jails, namely the invasive 'strip/body cavity searches' of individuals visiting [DOC] facilities." *Grottano*, 2021 WL 5563990, at *1. But apart from the parties' scramble to correct defects in the Initial Claims Notice and to adjust for claims that were not remotely

---

[3] Class Counsel has agreed to:

> a) review[] all DOC visitor complaints, . . . ; b) continu[e] on site-monitoring by visiting all DOC facilities; c) participat[e] [in] at least three 'All-Parties' meetings with the City's attorneys and DOC officials to discuss the implementation of the injunctive relief . . . ; d) continue to observe and attend trainings of DOC employees on visitor searches; e) . . . review and advocate for amendments and/or additions to [any new DOC directives and/or instruction materials concerning visitor search procedures.]

Simpson Decl. ¶ 18.

predicted, the litigation was not overly complex. Defendants' "liability was never vigorously contested, as the parties settled early in the litigation . . . and there have been no objections to the proposed settlement." *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019); *see also* Mot. at 4. The litigation in this case included a motion to dismiss, depositions, discovery disputes, and settlement. *See* Mot. at 4. The Court acknowledges that "[f]or the past [six] years, Class Counsel has had to dedicate resources without guarantee of compensation." *Stinson v. City of N.Y.*, 256 F. Supp. 3d 283, 296 (S.D.N.Y. 2017). There is always risk where attorneys take a case on a contingency fee. *See Alderman v. Pan Am World Airways*, 169 F.3d 99, 102-03 (2d Cir. 1999).

The fourth *Goldberger* factor—"the quality of representation"—weighs in favor of reducing the Requested Award. As noted, the Initial Claims Notice to potential class members and the attendant underestimation of the number of claimants were far from optimal and, among other things, resulted in serious delay and dashed expectations of the amount of payments to class members. *See Trinidad*, 2014 WL 4670870, at *11. The Initial Claims Notice attracted a much larger number of claims than anticipated, in part, perhaps, because Class Counsel projected and publicized individual payouts of "approximately $4,000" per claimant. *See supra* Section II; *see also Grottano*, 2021 WL 5563990, at *3-4. Remedying this problem required at least two outside expert mediators, *i.e.*, Professor Rubenstein and former Magistrate Judge James C. Francis IV, more than a year of re-negotiations, drafting and circulating a supplemental claims notice, and a second round of claims administration and costs. *See Grottano*, 2021 WL 5563990, at *3-4. Not to mention multiple additional and extensive court submissions and proceedings. *See, e.g.*, Ltr. from Raymond Audain, dated Mar. 15, 2020, ECF No. 282; Dfs. Ltr. dated Mar. 15, 2020, ECF No. 283; Tr. of Nov. 9, 2020 Conference at 7:18 – 8:19; Settlement Modification ¶ 3.

As a result, settlement payments to class members were significantly delayed and dramatically reduced. The amount ultimately paid to class members was a minimum of $1,000 and was much less than the "approximately $4,000" stated in the Initial Claims Notice. *Grottano*, 2021 WL 5563990, at *3. In sum, the fourth *Goldberger* factor weighs in favor of reducing the Requested Award significantly in light of the troublesome management of claims and the claims process. "Although not the fault of Class Counsel alone, the . . . errors nevertheless occurred on Class Counsel's watch and [] led to lengthy delays and not insignificant errors in the settlement distribution process and the final resolution of this action." *In re PaineWebber Ltd. P'ships Litig.*, 2003 WL 21787410, at *2. That no class member has objected to the requested attorneys' fees of $4.5 million is not surprising because the class awards were always independent of Class Counsel's legal fees (which are being paid by the City of New York, the primary Defendant in this case). *See* Settlement Agmt. ¶¶ 11, 53.

The fifth *Goldberger* factor—"the requested fee in relation to the settlement"—also weighs in favor of reducing the Requested Award. The Requested Award is 36% of the Settlement Fund and is well above the upper limit of fee awards granted by this Court—and also well above many fee awards in this District. *See, e.g.*, *Shapiro*, 2014 WL 1224666, at *19 (citations omitted) ("[A] review of district court decisions in this Circuit applying the *Goldberger* factors place a reasonable percentage of the fund range between 10% and 30%."); *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010) (affirming 13% fee award in strip search case). The Requested Award also falls above the top end of the range for civil rights actions in this District and for strip search cases generally. *See Stinson*, 256 F. Supp. 3d at 297; *McDaniel*, 595 F.3d at 426 (citing *Nilsen v. York Cnty.*, 400 F. Supp. 2d 266, 281 (D. Me. 2005) (collecting strip search cases)).

The sixth and final *Goldberger* factor is "public policy considerations." "The court

considers what fee would adequately encourage class counsel to continue bringing cases of merit in the future. . . ." *Seijas v. Republic of Argentina*, 2017 WL 1511352, at *14 (S.D.N.Y. Apr. 27, 2017). **"[B]ut courts must also guard against providing a monetary windfall to Class Counsel . . . ."** *Hart v. BHH, LLC*, 2020 WL 5645984, at *11 (S.D.N.Y. Sept. 22, 2020) (emphasis added) (internal quotation marks omitted); *see also In re NTL Inc. Sec. Litig.*, 2007 WL 1294377, at *8 (S.D.N.Y. May 2, 2007) ("[A] 15% fee is reasonable because it will not bring a windfall to co-lead plaintiffs' counsel."). The Court also considers that the fee will be paid directly by the City of New York and will not come at the class' expense. *See Hart*, 2020 WL 5645984, at *11.

The court finds that a 20.8% fee award strikes the right balance between outcomes for the class and encouraging litigants to bring forward impactful cases concerning constitutional liberties. *Seijas*, 2017 WL 1511352, at *14.

### B.  Lodestar Cross Check

The Court also finds that it is appropriate to reduce Class Counsel's proposed lodestar by 10%, *i.e.*, from $2,561,625.65 to $2,305,463.08, to account for weaknesses in the billing records, including, among other things, vague time entries, partner-heavy billing, and the time spent to correct the Initial Claims Notice problems. *See N. L-C. v. N.Y.C. Dep't of Educ.*, 2022 WL 831820, at *5 (S.D.N.Y. Mar. 18, 2022).

Class Counsel Billing Records include dozens of vague entries such as: "Many emails/calls with and about class members – various issues"; "Telephone conference with co-counsel re case"; "Telephone conference with opposing counsel re case"; "confer with RA"; and "doc review." *See* Class Counsel Billing Records (3/2/2022 attorney Simpson entry; 4/11/2019 attorney Audain entry; 10/7/2015 Giskan entry; 5/12/2016 attorney Simpson entry). A court "may reduce the [attorneys'] fees requested for billing entries that are vague and do not sufficiently demonstrate what counsel did." *Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 636 (S.D.N.Y. 2012)

(citations omitted); *see also Abeyta v. City of New York*, 2014 WL 929838, at *5 (S.D.N.Y. Mar. 7, 2014), *aff'd*, 588 F. App'x 24 (2d Cir. 2014) ("[A] selection of [billing] entries are impermissibly vague.").

Class Counsel Billing Records also reflect that Class Counsel's allocation of time was heavily weighted towards partners. *In re Platinum & Palladium Commodities Litig.*, 2015 WL 4560206, at *4 (S.D.N.Y. July 7, 2015). "Courts have reduced the fee percentage requested where, as here, the lodestar value reflects an over-allocation of work to more expensive partners." *Id.* (citation omitted). Three partners (Messrs. Giskan, Menken, and Simpson) and one senior counsel (Audain) billed 3,201 hours, or 55% of all hours billed to the case. *See* Simpson Decl. ¶ 23. Class Counsel's 55% allocation of work to the most expensive attorneys supports a reduction of the proposed lodestar. *See Rozell v. Ross-Hoist*, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) ("[A] disproportionate amount of time was billed by the more senior counsel . . . relative to that billed by more junior associates with lower hourly rates."); *see also Ravina v. Columbia Univ.*, 2020 WL 1080780, at *8 (S.D.N.Y. Mar. 6, 2020) (reducing hours billed by 35% where "the participation of [four] high-billing attorneys was indeed inefficient").

Class Counsel Billing Records also reflect dozens of time entries—recorded over the course of more than a year—relating to the problems caused by the flawed Initial Claims Notice. These entries include, among others, "Legal research re high claims rate"; "TC w/Prof Rubenstein re: various options, brainstorming on dealing with notice and claims rate issues"; and "TC w/all counsel re: supplemental notice[]; Meeting w/SS to discuss options and next steps"; "Draft letter to court regarding high claims rate; legal research re same"; "Edit and revise brief re technical deficiencies and final approval hearing"; "t/c with court regarding status of sett[lement], confer with co-counsel regarding same." *See* Class Counsel Billing Records (2/6/2020 Audain entry;

2/6/2020 Menken entry; 2/3/2020 Menken entry; 2/7/2020 Audain entry; 3/24/2021 Audain entry; 1/19/2021 Giskan entry). "[T]he district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). It is doubtful that a reasonable client would pay for the considerable time that Class Counsel spent resolving problems they, along with Defendants, created. *See Ge Chun Wen v. Hair Party 24 Hours Inc.*, 2021 WL 3375615, at *23 (S.D.N.Y. May 17, 2021), *report and recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021) ("Counsel's fee records, however, reflect that they are seeking recovery for the fees incurred for both the work that was improperly performed and the same work that was later redone. It would not be reasonable for Defendants to have to pay for Plaintiff's counsel's errors.") The excess time devoted to resolving the problems created by the Initial Claims Notice significantly delayed settlement payments to Class Members—and the final resolution of this case. *See supra* Sections II and V.A.

It is not entirely clear to the Court why a multiplier is warranted where, as here, Class Counsel are billing at handsome hourly rates. Mr. Giskan bills at $665 per hour; Mr. Menken bills at $650 per hour; Mr. Audain bills at $532 per hour; and Mr. Simpson bills at $475 per hour. Simpson Decl. ¶ 23. Associates working on this case billed at an average rate of $364 per hour; paralegals billed at a rate of $125 per hour. *Id.* "Historically, the two major factors driving a fee multiplier have been quality [of representation] and risk." *In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113, at *21 (S.D.N.Y. Feb. 1, 2010) (citation omitted). And, "it is unquestionably true that risk, quality and experience are ingredients in the formulation of an hourly billing rate." *Id.* at *22 (citing Herbert B. Newberg and Alba Conte, *Newberg on Class Actions* §

14:6 (4th ed. 2002)). The Second Circuit has affirmed a district court's denial of any multiplier on the basis that "the high hourly rates of counsel already accounted for risk and quality." *Id.* (citing *Goldberger*, 209 F.3d at 56-57). "The Court finds that [Class Counsel's] high billable rates have inflated the lodestar to a point where [they] need not benefit from a significant multiplier in order to be adequately compensated for the work performed." *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009).

Following a 10% reduction of Class Counsel's proposed lodestar, the fee award of $2.6 million returns a lodestar multiplier of 1.13. *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 2003 WL 21787410, at *2 (internal quotation marks omitted) (concluding that "applying a multiplier is unwarranted here in light of the significant mismanagement of the claims administration process" and noting that **"courts in this and other districts have declined to award any multiple to hours spent on claims administration, since there is no longer any risk involved at this stage in the proceedings"**); *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *15 (S.D.N.Y. Sept. 10, 2013) ("[I]f the lodestar is significantly out of line with the percentage of recovery, it raises a red flag."); *Schwartz*, 2015 WL 13630777, at *7. After thoroughly considering all of the circumstances of this case and utilizing the percentage of the fund method and a lodestar cross-check, the Court finds that a lodestar multiplier of 1.13 and a lodestar of $2,305,463.08 are appropriate. *See Schwartz*, 2015 WL 13630777, at *7. The Court finds that an attorneys' fee award of $2.6 million is reasonable.

## VI.   Reimbursement of Litigation Costs and Expenses

Class Counsel seek to be reimbursed for $14,651.48 in expenses. They have submitted a list of expenses by category which appears to include, among other things, filing fees, transcripts, postage, printing, mediation fees, and process servers. *See* Menken Decl.; Decl. of Oren Giskan, dated Sept. 20, 2021, ECF No. 346. Class Counsel state that these expenses are "modest" and

"represent[] .08% of the total recovery." Mot. at 22. Defendants contend that reimbursement should be withheld for two particular costs: (1) a $998.88 charge for "Printing Notice for DOC Facilities," for which Class Counsel did not provide "supporting documentation"; and (2) "$3,077.66 paid to JAMS [formerly known as Judicial Arbitration and Mediation Services] for binding mediation" because Defendants agreed to use a paid mediator "with the proviso that costs would be **evenly split**." Cross Mot. at 23.

"Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020). "[A] district court has broad discretion in awarding costs." *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 607 F.3d 24, 30 (2d Cir. 2010) (quoting *Lerman v. Flynt Distrib. Co.*, 789 F.2d 164, 166 (2d Cir.1986)).

The Court finds that Class Counsel are not entitled to reimbursement for the $3,077.66 mediation expense. Class Counsel "agreed to pay half of the price of the mediation" before Judge Francis at which Defendants agreed to a minimum payment of $1,000 for all eligible class members. Pls. Reply at 9. The parties' agreement to split the costs of this mediation was memorialized in a January 22, 2021 letter from Class Counsel to the Court. Ltr. from Raymond Audain, dated Jan. 22, 2021, ECF No. 304 ("We write to advise the Court that the Parties have agreed to request binding arbitration before The Honorable James C. Francis IV (Ret.) for three hours. The Parties have agreed to 50/50 cost splitting.").

The Court awards Class Counsel $10,574.94 in expenses. The Court will authorize an additional $998.88 for "Printing Notice for DOC Facilities" subject to Class Counsel providing the Court with additional documentation supporting that expense on or before August 15, 2022. The December 6, 2019 email between Class Counsel and Defendants attached to the Reply

Declaration of Oren Giskan, dated October 15, 2021, is not alone sufficient documentation for the expense. *See* ECF No. 357-1.

**VII.**     **Cross Motion for Reimbursement of Administrative Costs**

The dispute here is not entirely simple because the Settlement Agreement contemplates a **maximum** of $500,000 in administrative costs, which limit was exceeded by March of 2020. *See* Cross Mot. at 24. Because of the flawed Initial Claims Notice and attendant proceedings, claims administration costs currently exceed $1 million. *See* Ltr. from Claims Administrator, dated Mar. 3, 2022, ECF No. 431; Decl. of Angharad Wilson, dated Oct. 8, 2021, ¶¶ 3–4, 6 ("Wilson Decl."), ECF No. 353; *see also* Cross Mot. at 24; Pls. Reply at 10.

Defendants agreed to pay for the second round of notice and claims administration, but in doing so they "reserve[d] the right to seek partial or full reimbursement of this amount from Class Counsel attorneys' fees application." *See* Settlement Modification ¶ 12. The Court finds that the most equitable solution is to have both sides share the claims administration costs in excess of $500,000. Defendants are entitled to reimbursement from Class Counsel's fee award of one half (or 50%) of the amount Defendants have paid (or will pay) to the Claims Administrator, over and above the $500,000 Defendants agreed to pay in the Settlement Agreement. *See Goldberger*, 209 F.3d at 47 ("What constitutes a reasonable fee is properly committed to the sound discretion of the district court."); *see also OSI Sys., Inc.*, 607 F.3d at 30. Defendants are entitled to reimbursement because (1) they reserved their right to seek reimbursement for administrative costs in excess of $500,000; and (2) Class Counsel and Defendants share responsibility for the notice problems and the resulting overrun in administrative costs.

The Settlement Agreement provides that: "The Parties have agreed that the administrative costs shall not exceed $500,000.00. . . . The City will not reimburse the Claims Administrator for any amount that exceeds $500,000.00." Settlement Agmt. ¶ 54. As a result of the flawed Initial

Claims Notice process, administrative costs rose significantly and have exceeded the $500,000 limit by more than 100%. Notwithstanding the terms of the Settlement Agreement, Defendants paid the Claims Administrator an additional $159,024 on February 23, 2021 for costs incurred "during the first phase of claims administration." Wilson Decl. ¶ 6. On April 22, 2021, the parties modified the Settlement Agreement to allocate among themselves the costs of the second phase of the notice and claims administration process: "[Defendants] will pay the additional administrative costs associated with mailing the Supplemental Notice and Information and Certification Form, and reviewing and processing those forms. [Defendants] reserve the right to seek partial or full reimbursement of this amount from Class Counsel attorneys' fees application." *See* Settlement Modification ⁋ 12.

It is difficult, and likely neither fruitful nor possible, to **precisely** allocate responsibility for the overrun in administrative costs—not to mention the significant reduction in the proposed payments to class members. The fairest and most equitable solution appears to be for Class Counsel and Defendants to share equally the claims administration costs in excess of $500,000. The excess costs have resulted from the flawed Initial Claims Notice and attendant processes and proceedings for which both parties are responsible. The parties agreed to the form and substance of the Initial Claims Notice when they negotiated and executed the Settlement Agreement. *See* Settlement Agmt. ⁋ 9 (emphasis added) (referring to Initial Claims Notice as "the form *agreed to by the Parties* that Class Members must complete and submit in order to receive payment from this settlement"). Both Class Counsel and Defendants voiced support for the Initial Claims Notice while seeking preliminary approval of the Settlement from the Court. Class Counsel expressed confidence that the $12.5 million Settlement Fund would be sufficient for each claimant to receive the "approximately $4,000" which was included in the Initial Claims Notice. *See* Tr. of Oct. 30, 2019

Preliminary Approval Hearing at 24:9–25:2 (Court: "Do you have any basis for thinking that it will be 3,000 claimants, or around that number?"; Class Counsel: ". . . we believe it is likely that the 12.5 [million dollars] will cover everybody. . . . at $4,000 a person."). And, Defendants expressed confidence that the Initial Claims Notice would not attract claimants who did not belong in the class. *Id.* at 25:9-12 (Court: "do you think [the Initial Claims Notice] will engender people to respond who ultimately are not included in the class?"; Defendants' Counsel: "Your Honor, I don't believe so, because the parties agreed that on the claim form . . . [claimants] are signing the document on penalty of perjury.").

As it turned out, both parties were mistaken. The Initial Claims Notice was problematic. It gave rise to more than 40,000 potential class members, which would have meant less than $300 per claimant rather than $4,000 per claimant. It gave rise to a cost overrun of more than $159,000 in administrative fees on the first round of notice and claims administration and it has given rise to a second round of notice and claims administration costing more than $390,000. *See* Wilson Decl. ¶¶ 4, 6; Ltr. from Claims Administrator dated Mar. 3, 2022. It is fair that Class Counsel and Defendants share the added costs associated with their mutual mistake. *See See Standifer v. Franklin Collection Servs., Inc.*, 2005 WL 8158437, at *5 (N.D. Ala. Jan. 31, 2005) (there were far more claims, and lower pro rata payout, than parties expected); *see also McDaniels v. Westlake Servs., LLC*, 2013 WL 2491337, at *17 (D. Md. June 7, 2013) (where class action settlement notice contained misstatement concerning payments to class members, court ordered party responsible for misstatement to bear cost of new notice to class members); Ann. Manual Complex Lit. § 21.313 (4th ed.) ("Those who made the misstatements should bear the cost of a [class action] notice to correct misstatements.").

## VIII. <u>Conclusion & Order</u>

For the foregoing reasons, Class Counsel's Motion for Attorneys' Fees and Expenses [Dkt.

343] is granted in part and denied in part. The Court awards Class Counsel $2.6 million in attorneys' fees. The Court awards $10,574.94 in expenses. The Court also intends to award an additional $998.88 in expenses subject to Class Counsel providing further documentation for the "Printing Notice for DOC Facilities" expense on or before August 15, 2022.

Defendants' Cross Motion for Reimbursement of Administrative Costs [Dkt. 352] is granted in part and denied in part. Class Counsel is ordered to reimburse (from the $2.6 million attorneys' fee award) Defendants for half of the total amount of fees paid and to be paid to the Claims Administrator in excess of $500,000.

Dated: New York, New York
July 15, 2022

RMB

RICHARD M. BERMAN, U.S.D.J.